## 1521. SOUTHERN PACIFIC COMPANY *v.* CRENSHAW.

1. Under the Hepburn amendment to the interstate-commerce law (Act Cong. June 29, 1906, c. 3591, 34 Stat. 584; U. S. Comp. Stat. Supp. 1907, p. 892), a common carrier receiving property for interstate transportation and issuing a receipt or bill of lading therefor becomes liable to the lawful holder of the receipt or bill of lading for any loss, damage, or injury to the shipment, caused by itself or by any other common carrier over whose line the shipment may pass en route to destination; and all contracts, receipts, rules, or regulations by which the initial carrier may attempt to relieve itself of this liability are void and unenforceable. This, like all other acts of Congress made pursuant to the constitution of the United States, is a "law of general operation in this State," and is to be given effect as such by the courts of this State.

2. While the constitution of the United States has conferred upon the national legislature the exclusive power of regulating commerce among the several States and of dealing with the other subject mentioned in article 1, section 8 (Civil Code, § 5974), of that instrument, it has not conferred upon the national judiciary the exclusive jurisdiction of administering such legislation and of enforcing rights arising thereunder. There are times, however, when the State courts can not give due effect to national legislation otherwise than by refraining from exercising any jurisdiction over the subject-matter of the congressional action; and such is the case whenever the statute confers exclusive jurisdiction, expressly or by necessary implication, upon some other tribunal or tribunals, or whenever any attempt by the State courts to administer the statute or to enforce rights thereunder would be inconsistent with the purposes of the legislature or would tend to make its provisions less uniform or effective.

3. Under the peculiar relation existing between the State and Federal governments, many of the ordinary rules of that branch of jurisprudence commonly known as private international law are not applicable in determining when and how far the courts of the State shall enforce the statutes of the United States, and vice versa.

4. It stands to reason, and may also be deduced from authoritative adjudications, that, as to the power and the duty of the State courts to administer Federal statutes, and of the Federal courts to administer State statutes, the duty to take jurisdiction, when invoked, is, in general, coextensive with the power to do so, and exists irrespective of whether the right declared by the statute and asserted by the suit existed at common law or sprang new-born from the enactment itself; and that the power and the duty to take and exercise jurisdiction to enforce such a right are determinable from considerations other than whether the statute naming the right is, as to the common law, declaratory or derogatory.

(a) So much of the provision of the Hepburn amendment, referred to in the first headnote, as makes the carrier receiving goods for transportation to a destination beyond its own terminus responsible for loss or damage occurring on any portion of the route is declaratory of the common law. So far as it forbids and annuls contracts exempting the initial carrier from liability for loss and damage arising after the shipment has passed into the possession of the connecting carriers, it is in derogation of the common law.

5. This court is of the opinion that sections 8 and 9 of the interstate-commerce law do not confer on the interstate-commerce commission or on the Federal courts jurisdiction over an action by a shipper or the lawful holder of the bill of lading, against the initial carrier, for loss or damage done to the property pending an interstate carriage of it. But even if these sections confer jurisdiction on the commission or on the Federal courts as to such a controversy, the jurisdiction so conferred is cumulative, and not exclusive, and the State courts may nevertheless entertain such an action.

6. While the Federal statute fixing the liability of the initial carrier to the holder of the bill of lading expressly preserves in favor of the

shipper or owner of the goods all remedies and rights of action otherwise existing, yet where the terms of the statute are directly applicable, they become the paramount law on the subject, and all State laws to the contrary are pro tanto superseded.

7. A petition which sets out that the plaintiff is the lawful holder of the bill of lading issued by the defendant (a common carrier) for certain property to be transported from one State to another, and that the property was found to be damaged upon its arrival at destination, is properly instituted in a State court, and sets out a valid cause of action, although the copy of the bill of lading attached as an exhibit contains certain contractual terms which, but for the provisions of the Federal statute mentioned above, would exempt the defendant from liability in the case.

Complaint, from city court of Atlanta—Judge Reid. November 6, 1908.

Argued January 26,—Decided February 20, 1909.

*McDaniel, Alston & Black,* for plaintiff in error.

*John L. Hopkins & Sons,* contra.

POWELL, J.   Crenshaw Brothers brought suit against the Southern Pacific Company, alleging, in addition to formal and jurisdictional statements, as follows:   "On October 19, 1907, there was shipped from Newcastle, California, over the railroad of the Southern Pacific Company, a car of grapes containing 925 crates.   The said grapes were shipped by W. J. Wilson & Son of Newcastle, marked 'California Fruit Distributors.   Notify McDonald & Company, Atlanta, Georgia.' . .   After the car had left Newcastle, by order of the shippers and agreement with the carrier the destination of said car was diverted to petitioners at Tampa, Florida. On the original bill of lading appeared the following notice: 'Permit inspection before unloading without bill of lading.   Deliver without bill of lading on consignor's written order.'   The original bill of lading was endorsed by California Fruit Distributors and delivered to petitioners.   Petitioners further show that it is the custom of fruit shippers in California to order the shipments diverted after they leave the point of shipment, the original billing being, except in the rarest instances, never the direct one.   Said Southern Pacific Company had full knowledge and notice of this custom, and accepted the shipment from Wilson & Son with full knowledge that the same would be diverted before it reached its destination.   The original bill of lading was so issued and stamped as above set out that the diversion might be facilitated.   At the time the car in question was loaded and left Newcastle, the grapes

it ,contained were perfectly fresh and in the best possible condition,. and, had they been transported properly and without unreasonable delay, same would have reached petitioners at Tampa in first-class condition. When said car of grapes was delivered to petitioners. in Tampa, 704 out of the original 925 crates which it contained were found to be damaged; 504 crates were entirely worthless and had to be thrown away. . . . In addition to this, three crates of grapes had been stolen or otherwise removed from said car after they were delivered to the Southern Pacific Company in. Newcastle." By a second count it was alleged, that another car was likewise delivered to the defendant at Newcastle, California, as initial carrier; that the original destination was stated as Omaha, but by consent of shipper and carrier the shipment was diverted to petitioners at Tampa, Florida; and similar allegations are made as to this shipment as appear in regard to the shipment referred to in the former count. By paragraph 16 of the petition it is alleged that "said Southern Pacific Company, as initial carrier, is liable to petitioner for the damages sustained." Copies of the bills of lading were attached as exhibits. It will not be necessary to set these out in extenso, but it will suffice to say that they were in such language as to constitute them through contracts of shipment, with an expressed purpose of limiting the liability of the initial carrier to responsibility for damage occurring only on its part of the route; they were express contracts of the same general purport and nature as that contained in the bill of lading described and discussed in the case of *Atlantic Coast Line* v. *Henderson,* 131 *Ga.* 75 (61 S. E. 1111). See also *Southern Ry. Co.* v. *Frank,* ante, 574 (63 S. E. 656). The defendant filed a general demurrer. The demurrer did not in terms make any reference to the act of Congress known as the interstate-commerce act, or what is known as the Hepburn amendment to that act, but these statutes seem to have been drawn into the argument of the case in the trial court, as appears from recitals in the judgment of the court. The trial judge filed his opinion and judgment. as follows: "In my opinion this court has not jurisdiction of the cause of action so far as it rests on the Hepburn or interstate-com- merce act; and to this extent the demurrer is sustained; but other- wise it is overruled. While it would seem that the bills of lading constitute contracts ῾exempting each carrier from liability for loss.

or damage not done on its own line and not by its own negligence, the burden is on the initial carrier of showing that the loss occurred within the exception excusing it from liability." It is proper to state in this connection that since the only question before the trial court was whether the petition set out a cause of action, and the judge held that it did, there is nothing in the opinion, expressed by the judge, that the action could not be sustained in the State court under the Hepburn or interstate-commerce act, which put upon the plaintiff the necessity of excepting by crossbill or otherwise, or which limits the extent of this court's inquiry into the whole range of the law involved in the question presented by the demurrer. Compare the concluding paragraph in the opinion of the court, on motion for rehearing, in the case of *Cuesta* v. *Goldsmith,* 1 *Ga. App.* 56 (57 S. E. 983). The case comes to this court on exceptions filed by the defendant, to the court's overruling the general demurrer.

By section 7 of the act of Congress approved June 29, 1906 (c. 3591, 34 Stat. 595, U. S. Comp. St. Supp. 1907, p. 909), known as the Hepburn act, the twentieth section of the interstate-commerce act of February 4, 1887 (c. 104, 24 Stat. 386, U. S. Comp. St. 1901, p. 3169), was so amended as to add thereto the following, among other provisions: "That any common carrier, railroad, or transportation company, receiving property for transportation from a point in one State to a point in another State, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to

the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." This is a clear, unequivocal declaration by the Congress of the United States as to the terms on which common carriers shall receive the property for transportation from a point in one State to a point in another State; and it is plain that the provisions are applicable whether the point of destination is upon the route of the initial carrier or not. In the light of the well-recognized principle that whenever Congress promulgates regulations of interstate commerce, such regulations are paramount and exclusive, it would seem to follow that a carrier can not receive property for transportation from one State to another without making this law of the land a part of the contract of shipment. By article 12, section 1, par. 1, of the constitution of this State (Civil Code, § 5932), this enactment, being a law of the United States, made in pursuance to the constitution of the United States, is a law "of general operation in this State," and is to be given effect as such by the courts of this State. Sometimes the State courts can not give due effect to such legislation otherwise than by refraining from exercising any jurisdiction over the subject-matter of the congressional action; and such is the case whenever exclusive jurisdiction is, by the Federal statute, expressly or by fair implication conferred on other tribunals, or whenever any attempt by the State courts to administer the law or to enforce rights thereunder would be inconsistent with the purposes of the legislation or would tend to make its provisions less uniform or effective. Thus in the case of Texas & P. Ry. Co. *v.* Abilene Cotton Oil Co., 204 U. S. 426 (27 Sup. Ct. 350, 51 L. ed. 553), it is held that, Congress having provided a means by which interstate transportation rates might be kept not only reasonable but also uniform and free from discriminations, the State courts were precluded from exercising the power they otherwise would possess, of adjudicating whether an interstate rate fixed by a carrier was unreasonable, since the exercise of that power by the State courts would tend to make the administration of the law less uniform, and especially to make impossible the adequate enforcement of the provisions against discriminations. It must be remembered, however, that although the constitution of the United States has conferred upon the national legislature the exclusive power of regulating commerce among the several States

and of dealing with the other subjects mentioned in article 1, section 8, of that instrument (Civil Code, §5974), it has not conferred upon the national . judiciary the exclusive jurisdiction of administering those regulations or of enforcing rights arising thereunder. Thus, an act of Congress provides . for a system of bankruptcy, for the divesting and the transfer of the title to the property of bankrupts, for the conferring of such title to such property upon trustees in bankruptcy, and other similar substantive matters, and yet the State courts recognize and enforce rights, liabilities, and exemptions arising under this law, adjudicate controversies between trustees in bankruptcy and other persons, and otherwise aid in administering the law as declared by Congress, withholding jurisdiction only where to exercise it would be in conflict with the purposes of the act, or where it is manifest from the law itself that the congressional intention was that the Federal courts alone should act. Many other examples might be cited.

Counsel for the plaintiff in error insist that if the provision of the interstate-commerce act first cited above is the law to be enforced as to the case at bar, the action can not be maintained in the State court, because, by sections 8 and 9 of that act, exclusive jurisdiction is conferred upon the interstate-commerce commission and upon the United States courts. Section 8 is as follows: "That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." Section 9 is as follows: "That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this

act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt." In this connection it should be noted, however, that one of the provisions of section 22 of the act is that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies"; also that the excerpt from the Hepburn amendment quoted at the beginning of this opinion, as if to make assurance doubly sure, provides that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." That there may be no misunderstanding, let it be stated that it is clearly understood here that neither of these provisions is adequate to reserve to the State courts any jurisdiction the exercise of which would be inconsistent with the purposes of the legislation, or would tend to make its provisions less uniform or effective, or would encroach upon the paramount power of the Congress to provide for the enforcement of the prescribed regulations in the particular manner deemed by that body to be most expedient. See T. &. P. Ry. Co. *v.* Abilene Cotton Oil Co., supra.

It is said further that the statute now before us, upon the particular part of it here involved, has created a new right and imposed a new duty, and has prescribed a remedy for its enforcement, and that this remedy is exclusive. An excerpt from the text of Lewis's Sutherland on Statutory Construction, §720, is cited in support of the proposition, as follows: "Where a statute creates a new right or imposes a new duty or liability, unknown to the common law, and at the same time gives a remedy for its enforcement, the remedy so prescribed is exclusive." It is perhaps fair to the author quoted to add here a succeeding statement taken from the same section as follows: "Where a new remedy is given by statute, and there are no negative words or other provisions making it exclusive, it will be deemed to be cumulative only, and not to take away prior remedies." The proposition that a new right is to be enforced only in the courts of the sovereignty that created it and in the particular manner prescribed is a dis-

puted question of private international law that we had occasion to discuss at some length in the case of *Southern Ry. Co. v. Decker,* ante, 21 (62 S. E. 678). As we attempted to point out in that case, following a statement of Minor in his Conflict of Laws (§ 200), the hesitancy once evinced by courts to enforce new civil rights created by other sovereignties has in large part given way in favor of a more enlightened policy under which the courts will not refuse to administer justice between parties properly before them, even where to do that justice requires the court, under its duty of deciding the case according to the proper law, recognized as applicable to the transaction, to enforce rights unknown to the common law and to the law of the forum, and created by some foreign legislature. In one of the leading cases to the contrary of this proposition (a case cited in support of the text in the excerpt quoted from Lewis's Sutherland on Statutory Construction, supra, and also cited by counsel for plaintiff in error in his brief), McGinnis v. Missouri Car. Co., 174 Mo. 225 (73 S. W. 586, 97 Am. St. R. 553), the court admits that the courts of that State have refused to follow the opinion of the Supreme Court of the United States in the case of Dennick v. Central R. Co., 103 U. S. 11 (26 L. ed. 439), on the question. The view of the Supreme Court of the United States as expressed in the Dennick case, and followed by that court in several other cases and by this court in the *Decker* case, seems to us to be too sound to admit of serious question. This principle is, however, not strictly applicable to the duty of State courts as to the enforcement of rights, duties, liabilities, etc., arising under statutes of the United States. We think, as we have said above, that the State courts are bound to enforce such rights unless there is something in the terms of the Federal statute or in the nature of the legislation itself to render an exercise of jurisdiction by the State court improper. Considering the peculiar relationship existing between the State and Federal governments, it may be deduced from the cases of Dennick v. R. Co., and T. & P. Ry. Co. v. Abilene Co., supra, and other similar authoritative adjudications, that, as to the power and the duty of the State courts to administer Federal statutes and of the Federal courts to administer State statutes, the duty to take jurisdiction when invoked is, in general, coextensive with the power to do so, and

exists irrespective of whether the right declared by the statute existed at common law or sprang new-born from the enactment itself, and that the power and the duty to take and exercise jurisdiction to enforce such a right are determinable from considerations other than whether the statute naming the right is, as to the common law, declaratory or derogatory; further that any particular remedy prescribed by the statute will not be deemed to be exclusive unless it plainly appears to be so from the express language of the enactment, or from other legislative declarations or from reasonable implication, or from the nature of the subject-matter involved.

However, before we pass from this phase of the question let us analyze a little further the terms of the provision of the Hepburn amendment now immediately before us. It may require resort to construction to determine whether the language employed is broad enough to require a carrier to receive property intended for transportation to a destination beyond its own lines, but that question is not before us; for in the case at bar the carrier did actually receive the property for transportation to a point beyond its terminus. (See, however, section 1 of the amended act. See also Hutchinson on Carriers [3d ed.], §526.) At common law a carrier was not required to receive property for transportation to a point beyond the end of his own route, though he might do so if it met his pleasure. *Coles* v. *Central R. Co.*, 86 *Ga.* 251 (12 S. E. 749); *State* v. *W. & T. R. Co.*, 104 *Ga.* 437 (30 S. E. 891); Hutch. Car. (3d ed.) §226; Southern Pac. Co. *v.* Interstate Com. Com., 200 U. S. 554 (26 Sup. Ct. 330, 50 L. ed. 593). However, if the carrier did receive the property for carriage to destination, he was, in the absence of a valid contract to the contrary, liable for loss or damage occurring on any part of the entire route. This rule, announced by the English courts in the Muschamp case, 8 M. & W. 421, has been recognized by the courts of this State in a number of decisions as a part of the common law. *Mosher* v. *Southern Express Co.*, 38 *Ga.* 37; *Falvey* v. *R. Co.*, 76 *Ga.* 597 (2 Am. St. R. 58); *So. Ry. Co.* v. *Montag*, 1 *Ga. App.* 650 (57 S. E. 933). Therefore, so far as the Hepburn act merely declares that the carrier receiving the property for transportation to a point in another State shall be liable to the holder of the bill of lading "for any loss, damage, or injury to

such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass," it is merely declaratory of the common law. It is only in so far as it enacts that "no contract, receipt, rule, or regulation shall exempt such common carrier . . from the liability hereby imposed" that it is in derogation of the common law. In fine, the enactment, so far as it is applicable to the present case, is merely a declaration by Congress, the law-making power having paramount jurisdiction of that subject, that as to interstate shipments all contracts tending to vary the carrier's common law liability, of responsibility to destination on a through bill of lading, shall be void. Its effect is not to give the shipper directly and immediately any new right, but to cut off from the carrier a defense it otherwise would have, to take away from it a means of avoiding what otherwise would be only a prima facie liability.

Though to give the plaintiff in the present case the benefit of the provisions of the law just referred to would facilitate a recovery against the defendant, and though his right of recovery under the facts alleged is declared by that act, yet we do not think that his damages have arisen in such a manner as to confer jurisdiction on the interstate-commerce commission or on the Federal courts, according to the provisions of sections 8 and 9 of the interstate-commerce law. In a former portion of this opinion we have quoted the language of these two sections. Let us now consider the terms of these sections attentively. Taking up section 8, it will be seen that it declares a liability for the resulting damages where a common carrier subject to the provisions of the act "shall do, cause to be done, or permit to be done, any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done." What forbidden thing has the present carrier done? What required thing has it omitted to do? If the act requires it to receive the goods, it has received them. If the act requires it to issue a through bill of lading, it has issued it. The liability which the plaintiff here is seeking to enforce may, in a certain sense, be said to arise from the fact that the carrier did not omit to do the thing which the act required,—a situation not within the contemplation of the section before us.

If the carrier had refused to issue the receipt or bill of lading, then his delinquency would have fallen within the terms of the provision now under our immediate attention. Looking now to section 9, by which it is contended the exclusive jurisdiction is conferred on the interstate-commerce commission and the Federal courts, it will be seen that any person claiming to be damaged by any carrier engaged in interstate commerce may either "make his complaint to the commission as hereinafter provided for or may bring," etc.; but before we take up the other choice under the alternative given by the statute, let us see how and to what extent he may make his complaint to the commission. The words, "as hereinafter provided for," refer to the proceedings authorized by sections 13 and 15 of the act. Under section 13, any person complaining of "anything done or omitted to be done by any common carrier subject to the provisions of this act in contravention of the provisions thereof" may apply to the commission by petition. Upon this complaint being filed, notice is to be given to the carrier and an investigation is to be had in accordance with section 15. Section 15 of the original act, however, was subjected to an amendment in the Hepburn act; the original provisions were stricken, and the substituted matter relates exclusively to complaints made as to the unreasonableness of the rates or as to discriminatory practices. From a comparative examination of sections 13 and 15 it will plainly appear that no jurisdiction has been conferred upon the commission to sit as a court and determine the liability of a carrier to the shipper for the loss of goods for which a bill of lading had been duly issued in accordance with the terms of the act. Proceeding to the further consideration of section 9 of the act, it will be seen that instead of bringing his complaint before the commission, the shipper may bring suit in any district or circuit court of the United States of competent jurisdiction "for the recovery of the damages for which such common carrier may be liable under the provisions of this act." The words "the damages for which such common carrier may be liable under the provisions of this act," by a familiar rule of construction, are to be considered as referring to the damages declared and provided for by the preceding section; and as we have seen, the present plaintiff's cause of action does not fall within the provisions of that section.

Even if we are in error in our opinion that the interstate-commerce act confers no jurisdiction on the Federal courts in a case like this, we have no hesitancy in saying that the jurisdiction of these courts is concurrent with that of the State courts, and not exclusive. We have quoted above the provisions of the act preserving existing remedies. In the case of Texas & P. R. Co. v. Abilene Cotton Oil Co., supra, the Supreme Court of the United States, referring to this proviso, said: "This clause, however, can not in reason be construed as continuing in shippers a common law right, the continuance of which would be absolutely inconsistent with the provisions of the act. In other words, the act can not be held to destroy itself. The clause is concerned alone with rights recognized or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act." In the nature of things there is no reason why the exercise by the State courts of jurisdiction in cases like the one at bar would in the least be inconsistent with the purposes of the act. Indeed, we have no doubt that at the time when the provision declaring the liability of the initial carrier in interstate shipments was inserted in the act, it was within the legislative mind that it would be expedient to prescribe a uniform rule on the subject, binding on State and Federal courts alike. Until Congress spoke, the States were free to give to such transactions varying liabilities. The courts of some States recognized the rule in the Muschamp case, supra; others did not; some States allowed carriers to exempt themselves from all or a part of the common law liability, by rule, regulation, or contract; others did not; the Federal courts sitting in the various States were following the local rule, a carrier being held liable in one court when under the same state of facts he would be exempt from liability in another; hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own State, or for a carrier whose lines were extensive, to know without considerable investigation and

trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one State to another. The congressional action has made an end to this diversity; for the national law is paramount and supersedes all State laws as to the rights and liabilities and exemptions created by such transactions. This was doubtless the purpose of the law; and this purpose will be effectuated, and not impaired or destroyed by the State court's obeying and enforcing the provisions of the Federal statute where applicable to the facts in such cases as shall come before them. It may be said in passing that the liability imposed against the initial carrier does not (according to the express terms of the act) prevent the owner of the goods from proceeding ex delicto against the last or connecting carrier for loss or damage to the goods, where such carrier would be liable under the existing laws. It may be noted, too, in this connection that the provision for a uniform liability against the initial carrier without the power to stipulate for an exemption from the liability seems to follow as a logical sequence from the general plan of the interstate-commerce law as finally amended. By section 1 of the act common carriers are required to file and publish through rates on request and to make through contracts. By other sections the published rates are to be charged in every case. The natural and ordinary liability, —that is to say, the common law liabiilty arising against the initial carrier from his obedience to the law in accepting the shipment for through carriage,—was, as we have said above, responsibility to destination. At common law it took a contract, express or implied, to change this liability or to exempt the carrier from any portion of it. The contract of exemption, like any other contract, should rest on a consideration. The usual consideration was a reduction from the ordinary rate. To allow such reductions would tend to promote the very discriminations against which the act is largely aimed. The arts by which discriminations may be practiced being so subtle and various, Congress doubtless deemed it wise to allow but one rate and one liability as to each and every similar transaction. We may add that the legislature of this State has adopted the same rule as to intrastate shipments. See act of Aug. 18, 1906 (Ga. Laws 1906, p. 102).

To gather now the threads of the argument and to apply the

law to the present case: the acts of Congress made in pursuance of the constitution of the United States constitute a part of the laws of this State and are binding on the courts as such; the State courts ordinarily have jurisdiction to enforce rights and liabilities created by congressional action where the exercise of that jurisdiction would not conflict with the plans and purposes manifested by the nature of the terms of the Federal enactment; and this is true whether the statute creating the right is, as to the common law, declaratory or derogatory. Subject to the limitations just indicated, the conferring of jurisdiction upon Federal tribunals as to a given subject-matter usually makes that jurisdiction cumulative, and not exclusive. By the Hepburn amendment to the interstate-commerce act, carriers receiving goods for transportation from one State to another must issue through bills of lading, and are liable to the holders of the bill of lading for loss and damage to the property, whether occurring on their own lines or not; and no contract, rule, or regulation exempting the carrier from this liability is valid or enforceable. It is the opinion of this court that the interstate-commerce act confers no jurisdiction on the commission or on the Federal courts as to suits against carriers for loss or damage to property so transported, and that even if it does, the jurisdiction is not exclusive, and that the State courts may exercise jurisdiction as to such cases. The regulations of Congress on this subject are paramount and supersede all State laws, and the court trying a case to which the provisions of the act in question are applicable will follow the Federal statute, any State laws to the contrary notwithstanding. This being a suit against the initial carrier by the lawful holder of the bill of lading, showing that the goods receipted for by the bill of lading were damaged in transit, a cause of action is set forth, cognizable in the State court.                    *Judgment affirmed.*