**George COUNTER and Debra Counter, Plaintiffs,**

v.

**UNITED VAN LINES, INC., Graham Moving & Storage, Inc. and Lee O. Barnett, II, Defendants.**

No. 2:95–CV–320.

United States District Court, D. Vermont.

Aug. 7, 1996.

Richard E. Davis, Davis & Tobin, Barre, VT, for George Counter, Debra Counter.

Melvin Bauer Neisner, Jr., Killington, VT, for United Van Lines, Inc., Graham Moving & Storage, Inc., Lee O. Barnett, II.

*OPINION AND ORDER*

SESSIONS, District Judge.

Plaintiffs move to remand this action to state court, and defendants move to dismiss the action, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants plaintiffs' motion for remand.

## I. BACKGROUND

Plaintiffs brought this action in state court in Vermont, seeking damages that allegedly resulted from defendants' wrongful failure to carry out an agreement to assist them in moving from their home in Calais, Vermont to Virginia. In the complaint plaintiffs filed in Washington Superior Court, they made the following allegations. On November 22, 1994, plaintiffs entered into an agreement to sell their home in Calais, Vermont, contingent on their obtaining suitable housing for themselves and their four children in Virginia by April 15, 1995. On January 28, 1995, plaintiffs paid a $1,000 deposit and entered into an agreement to purchase a house in Waynesboro, Virginia, contingent on their closing on the sale of the Calais home by April 15, 1995.

Plaintiffs contacted defendant Graham Moving & Storage, Inc. ("Graham") to discuss the possibility of Graham providing moving services. On several occasions, plaintiffs met with defendant Lee O. Barnett, II ("Barnett"), a Graham employee, to discuss the costs and logistics of the move. During these discussions, Barnett made certain representations to induce plaintiffs to enter into a contract, including that Graham would employ an excellent, experienced crew, that the crew would load plaintiffs' property next to the home, that the total cost would not exceed $5,030.32, that Graham would inventory plaintiffs' property before the day of the move, and that Graham would wrap plaintiffs' upholstered furniture in plastic for shipment. Plaintiffs explained to Barnett the importance of their moving on April 12, 1995, and Barnett assured them Graham would effect the move on that day. Based on these representations, on March 8, 1995, plaintiffs entered into a contract with Graham, which provided, among other things, that the cost would not exceed $5,030.32.

On the morning of April 12, 1995, Barnett informed plaintiffs that Graham would not provide the moving services unless plaintiffs paid an additional $3,000. Graham required the additional payment for a number of reasons, including that the crew would have to shuttle plaintiffs' personal property to the moving van with a small truck, that Barnett underestimated the weight of the shipment, and that the crew were not as experienced as Barnett promised.

Plaintiffs could not afford the additional charges for the move and, consequently, could not close on the sale of their Calais home or the purchase of the house in Waynesboro, Virginia.

Plaintiffs brought claims for fraud, consumer fraud under 9 V.S.A. § 2451a(c), intentional infliction of emotional distress, negligent misrepresentation, and breach of contract. They sought damages for the lost sale of their home, the time spent preparing for their move to Virginia, expenses incurred in being unable to close on the Virginia property, the loss of plaintiff George Counter's employment, and medical expenses related to the care and treatment of their physical reaction to the nervousness brought on by defendants' conduct.

Defendants removed the action to federal court on the grounds that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707 (1988), preempted plaintiffs' state law claims. Plaintiffs moved to remand the action to state court, arguing that the Carmack Amendment did not apply to their claims. In support of their motion to dismiss, defendants argue that, under the Interstate Commerce Act and the Carmack Amendment, the Court lacks subject matter jurisdiction, and plaintiffs failed to state a claim upon which relief may be granted.

## II. DISCUSSION

Under the well-pleaded complaint rule, federal question jurisdiction exists only if the face of the plaintiff's complaint reveals an issue of federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425,

2429–30, 96 L.Ed.2d 318 (1987). The assertion of a federal defense, even the defense of preemption, does not justify removal. *Id.* at 393, 107 S.Ct. at 2430. However, under the "complete preemption" doctrine, an exception to the well-pleaded complaint rule, removal is proper if federal legislation is so complete that it entirely supplants the state law claims. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). If the Carmack Amendment completely preempts plaintiffs' claims, therefore, removal was proper.

The Carmack Amendment governs a motor carrier's liability to a shipper for the loss of, or damage to, an interstate shipment of goods. Its provisions have, over the years, been codified at various sections of Title 49 of the United States Code, and currently are codified at 49 U.S.C. § 14706. The Amendment provides that shippers may recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment. In part, it states:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed ... is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported ...

49 U.S.C. § 14706(a)(1).

■ By limiting a carrier's liability to the actual loss or injury to the transported property, Congress intended to provide certainty to both shippers and carriers, and to enable carriers to assess their risks and predict their liability for damages. *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). Shortly after its enactment in 1906, the Supreme Court described the situation that prompted Congress to pass the Carmack Amendment, and explained its purpose:

'Some states allow carriers to exempt themselves from all or part of the common-law liability by rule, regulation, or contract; others did not. The Federal courts sitting in the various states were following the local rule, a carrier being held liable in one court when, under the same state of facts, he would be exempt from liability in another. Hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper ... to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another. The congressional action has made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions. This was doubtless the purpose of the law ...'

*Adams Express Co. v. Croninger,* 226 U.S. 491, 505, 33 S.Ct. 148, 151–52, 57 L.Ed. 314 (1913) (quoting *Southern Pac. Co. v. Crenshaw Bros.,* 5 Ga.App. 675, 687, 63 S.E. 865 (Ga.App.1909)).

With respect to preemption, the Court stated: "Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." *Adams Express,* 226 U.S. at 505–06, 33 S.Ct. at 152.

■ The Second Circuit, in deciding whether the Carmack Amendment preempted a federal common law claim for breach of an implied covenant of good faith and fair dealing against a carrier for losses sustained in the transportation of household belongings, noted that a shipper's claims based upon lost or damaged goods during interstate transport are covered by the Carmack Amendment, "which has occupied the field to the exclusion of state law." *Cleveland v. Beltman North American Co.,* 30 F.3d 373, 378 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995). There

**508**

is no question that "the Carmack Amendment preempts state common law remedies that might be asserted against a carrier for damages to goods shipped under a proper bill of lading." *Id.* Had the plaintiffs claimed loss or damage to shipped goods, removal would have been proper under the complete preemption doctrine, notwithstanding the well-pleaded complaint rule.

The issue in this case, however, is whether the Carmack Amendment preempts state law claims of fraud, breach of contract and intentional infliction of emotional distress by a prospective shipper against a carrier who did not issue a bill of lading, and never shipped any goods. Plaintiffs do not allege that defendants lost or damaged their goods in the course of transporting them. Indeed, the crux of plaintiffs' complaint is that defendants failed to transport their goods. Defendants never took possession of plaintiffs' property, and plaintiffs never obtained a receipt or bill of lading. Plaintiffs' property was not shipped interstate; it was never picked up and was never shipped anywhere.

Under these circumstances, the Carmack Amendment does not apply to plaintiffs' claims. The purpose of the Carmack Amendment was to limit a shipper's recovery to the actual loss or injury to transported goods. In the instant case, there was no loss or injury to the property itself, and the property was never transported. Since the Carmack Amendment does not apply to plaintiffs' claims, it does not preempt their state law claims. *See, e.g., Sokhos v. Mayflower Transit, Inc.,* 691 F.Supp. 1578 (D.Mass. 1988) (Carmack Amendment did not preclude claim of mistake or fraud in connection with formation of a contract to transport goods); *Mesta v. Allied Van Lines Int'l, Inc.,* 695 F.Supp. 63 (D.Mass.1988) (complaint based on activities not undertaken in the course of transporting goods are not within the Carmack Amendment); *Elgharbawi v. Selly,* 483 N.W.2d 490 (Minn.App.1992) (Carmack Amendment did not apply to claim of property damage where goods were never transported); *Brown v. American Transfer and Storage Co.,* 601 S.W.2d 931 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980) (Carmack Amendment

did not preempt state law claim of false, misleading or deceptive acts which occurred before the contract of carriage was made).

Therefore, because the Carmack Amendment by its terms does not cover the claims made in this case, and pursuant to the well-pleaded complaint rule, plaintiffs' motion for remand (paper 3) is granted, and the matter is remanded to state court. Defendants' motion to dismiss (paper 5) is denied in light of the remand order.