THE COLUMBUS AND WESTERN RAILWAY CO. *vs.* KENNEDY.*

1. Whether the understanding of a shipper of live-stock that they were to be shipped through in the same car on which they were loaded at the starting point was admissible or not, under the circumstances of this case, it was entirely immaterial, and neither could nor ought to have had any influence on the finding of the jury; and the same thing is true as to the sayings of a livery-stable keeper at Chattanooga, as to the change of stock from one car to another, the stock being in good condition when it reached a point beyond that where the change was claimed to have been made, at which point the new contract of shipment was taken.

2. Where the owner of the stock testified that he did not find the stock at the point where he expected them on his arrival; that he searched for them at one or two other points, and finally found them at a place where they had arrived, in a damaged condition

---

*This case was argued at the last term, and the decision reserved.

from being bruised, thrown down, etc., it was admissible for him to testify that he at first refused to accept them from the company, and told the railroad agent that he did not want to take them; and that the latter told him to take them and do the best he could with them, and that the railroad company would make it all right. Such statements were a part of the *res gestæ*, appertaining to the transportation of the stock.

(*a*) It is not decided that the company was bound by the representations of this agent that it would make the damage good upon compliance by the plaintiff with the conditions mentioned.

3. By §3033 of the code, in cases of injury to persons or property, the presumption in all cases is against the railroad company that the injury was the result of their negligence, and to relieve themselves of this presumption, it is incumbent upon them to show that they were in the exercise of all ordinary and reasonable care and diligence; and this presumption is applicable as well to an action founded upon their general liability as to one founded on such a live-stock contract as that under which it was contended the horses involved in this case were shipped. Where the company showed, from the appearance of the car only, that the train on which the horses were brought to the place where the owner found them, had not been derailed, and showed how the injury might have happened, but not how it actually happened, and none of the employés in charge of the train were introduced as witnesses on the trial, to account for the injury, a verdict finding against the company was sustained by the evidence.

March 25, 1887.

Railroads. Damages. Negligence. Live-Stock. Evidence. Presumptions. Before Judge WILLIS. Muscogee Superior Court. May Term, 1886.

On April 21, 1884, W. W. Kennedy brought suit against the Columbus and Western Railway Company to recover damages for injuries to certain stock shipped to Columbus over defendant's line. The defendant pleaded the general issue, and that the horses were shipped by the plaintiff from Harrodsburg, Ky., to Columbus, Ga., under a contract by which the shipper released the railroads over which the stock should pass from any claim for damages, except such as might arise from gross and wanton negligence, and that the damages for which suit was brought did not so arise.

On the trial, the evidence for the plaintiff was, in brief, as follows: He shipped a car-load of 19 horses and one mule from Harrodsburg by a branch of the Cincinnati Southern Railroad. He attended to the loading, placing the animals in a large stock-car with plenty of bedding on the floor and prepared them to go through to Columbus. His understanding was that they would go through in the same car just as loaded. He received a pass to Chattanooga and went that far with the stock. There they were taken from the car and carried to a livery-stable to be watered and fed. They were all sound and in good condition. The plaintiff was taken sick at Chattanooga and did not see the stock any more until he arrived at Columbus. He asked the livery-stable man to get him a pass to Atlanta, which was done. When the plaintiff went to the stable the next morning, the stock were gone. The stable man told him that a railroad man came and put the stock in another car. Plaintiff went on to Atlanta, but did not see or hear of the stock and obtained no further pass. He went to Macon and thence to Columbus, not knowing of the Atlanta and West Point Railroad as a route to Columbus. On reaching there, he found that the stock had arrived about two hours previously. He carried them to a stable and found that two of the horses were gone and several others badly bruised and crippled. They were in a smaller and inferior car than that in which they were shipped, without any bedding. He told the railroad agent that he did not want to take them, and the agent told him to take them and do the best he could with them, and that the company would make it all right. When the stock arrived in Atlanta, they were unloaded and carried to a stable to be fed and watered. Two of the horses were dead and were left in the car in which they arrived there. On February 8th, the stable man in Atlanta shipped the stock to Columbus over the Atlanta and West Point Railroad and connecting roads. They were loaded in a car of that company, and it was put in as good condition as the

stable man could make it, and the animals were sound and well. He shipped them in his own name as owner and shipper, because the company required it, but in fact the plaintiff was the owner. The car did not show any sign, after it reached Columbus, of having run off the track or of having been injured. The plaintiff supposed the horses were injured by falling down and bruising themselves and each other. If there had been bedding in the car, they could probably have stood up and would not have been hurt if they fell. It is not the business of the railroad to put in bedding ; if they do so, they charge extra for it.

The evidence for the defendant tended to show that the two dead horses died before reaching Atlanta, and that the balance were forwarded from that point. The agent at Columbus denied having told the plaintiff that the company would pay for the stock.

The original contract of shipment contained the following clauses :

"In consideration of the special rate of $140 per car guaranteed by said railway companies between said point of shipment and Chattanooga, the shipper hereby agrees to load, unload, feed, water and take care of said stock, and insure the said railway companies and all connecting lines over which said stock may pass between said point of shipment and destination, from all loss or damage which may be incurred by delays in transportation or delivery, or arising out of its responsibility as master over its agents or servants (gross and wanton negligence excepted), growing out of this shipment."

This was signed by the plaintiff and the railway agent.

The contract of the Atlanta and West Point Railroad contained the following provisions :

"That whereas the Atlanta and West Point Railroad and connecting lines transport live-stock at only certain tariff rates, except when, in consideration of a reduced rate, the owner and shipper assumed certain risks specified below: Now in consideration of said railroad agreeing to transport the above described live-stock at the rate of ——, the same being a special rate given in consideration of this release, and a free pass to the owner or his agent on the train with the stock, the said owner and shipper does hereby assume and release the said railroad from all injury, loss and damage or depreciation which the

animal or animals, or either of them, may suffer in consequence of either of them being weak or escaping, or injuring itself or themselves or each other, . . . . and from all other damages incident to railroad transportation which shall not have been caused by the fraud or gross negligence of said railroad companies; and it is further agreed that the owner and shipper is to load, transfer and unload said stock (with the assistance of the companies' agent or agents) at his own risk. And it is further agreed that, in case of accident to or delay of trains from any cause whatever, the owner and shipper is to feed, water and take proper care of stock at his own expense. And it is further agreed that, while the companies' employés shall provide the owner or person in charge of the stock all proper facilities on trains and at stations for taking care of the same, the business of the companies shall not be delayed by the detention of trains to unload and reload stock for any cause whatever, but cars may be left at a station, upon the request of the person in charge of the same, to be forwarded by next freight train, if he so directs.''

This was signed by the livery-stable man in Atlanta as owner and shipper.

There was other testimony as to the extent of the injury. The jury found for the plaintiff. The defendant moved for a new trial on the following grounds:

(1) Because the verdict was contrary to law and evidence.

(2) Because the court permitted the plaintiff to testify as follows: " My understanding was that the stock would go through in the same car and as I had fixed them up."— The objection was that the contract was written and this was no part of it.

(3) Because the court permitted the plaintiff to testify as follows: " The livery-stable man told me that the railroad man had changed the car and put the stock in another."—The objection was that this was hearsay.

(4) Because the court permitted the plaintiff to testify as follows: " When I found the stock was badly bruised and injured, I told Mr. Williams, the railroad agent, I did not want to take them; he told me to take them and do the best I could with them and the company would make it all right."—The objection was that this was hearsay, irrelevant and illegal, and that the company was not bound by such admission of its agent.

The motion was overruled, and the defendant excepted.

PEABODY, BRANNON & BATTLE, for plaintiff in error.

J. M. SMITH; J. M. RUSSELL; C. J. THORNTON, for defendants.

HALL, Justice.

Kennedy instituted his suit against the railway company, upon its liability as carrier, for damages done to certain stock which he had shipped over its road. The special defence set up to this action was, that Kennedy shipped this stock from Harrodsburg, Ky., under what is usually known as a contract for the shipment of stock, which relieved the company from certain liability in regard to the stock, on consideration of the reduced rates accorded to the shipper, and of his free passage over the road to enable him to attend to the stock in certain respects. The owner accompanied this stock from Harrodsburg to Chattanooga, where he was taken sick and had to lie over. The stock were taken out of the car at Chattanooga, fed and watered, and, as he contends (though that is denied by the company), transferred at Chattanooga by the railroad authorities there to another and different car from that in which they were brought from Harrodsburg to Chattanooga. No one accompanied the stock from Chattanooga to Atlanta. Upon reaching the latter point, two of the horses were found to be dead. The balance of them were taken out and carried to a livery-stable in this place, and there fed and watered. The proprietor of that stable sought, as it seems, to forward them upon the original receipt taken; but to this the Atlanta and West Point Railroad, which connected with the defendant at Opelika, dissented, and requested him to ship the horses in his own name, giving him a contract similar in most respects to that which was first taken; at least, the variations were very slight. The plaintiff followed his stock. Not finding them in Atlanta,

he went around by Macon, and when he reached Columbus, he found that the stock had just arrived at that point. Several of the horses were seriously damaged in transportation; in fact, the whole lot of stock was in bad condition, being bruised and thrown down, etc. He at first refused to accept them at the hands of this company; but, as he says, he was assured by the agent of the company that the company desired him to take them and do the best with them that he could, and that they would aid him in getting compensation for the demage. It appeared from uncontradicted evidence that the stock shipped from Atlanta were in good condition when put aboard of the car on the Atlanta and West Point Railroad.

The jury found a verdict for the plaintiff for the amount of injury done to the stock. The defendant made its motion for new trial upon the general ground, and also on the following special grounds: (1) that there was error in permitting the plaintiff to testify that his understanding was that the stock should come through in the same car in which it was loaded at Harrodsburg, Ky.; (2) because the court erred in admitting the testimony of a livery-stable keeper at Chattanooga, who told the plaintiff that the railroad men at that point had changed the stock to another car; (3) in admitting the testimony of what was said by the agent of transportation of the defendant company at Columbus when the plaintiff applied for his stock. That testimony was in these words: " When I found the stock so badly bruised and injured, I told Williams, the railroad agent, I did not want to take them. He told me to take them and do the best I could with them, and the railroad company would make it all right."

1. Whether the understanding of this party as to the car in which this stock was to be shipped through was admissible or not, we are satisfied, under the circumstances of this case, that it was totally immaterial, and could and ought to have had no influence upon this finding. The same thing is true, as to the sayings of this livery-

stable keeper at Chattanooga, as to the change of this stock from one car to another. The stock was in good condition when it reached Atlanta and when this new contract of shipment was taken.

2. The objection to the plaintiff's testimony as to what the defendant's agent of transportation said to the plaintiff at Columbus, we do not think was well-founded. That is certainly a part of the *res gestæ* appertaining to the transportation of that stock. We do not go so far, however, as to say that the company was bound by the representations of this agent, that it would make this damage good upon compliance by the plaintiff with the condition he mentioned.

3. This leaves us to the consideration only of the propriety of the finding of the jury, which comes up under the general ground of the motion for new trial, that the verdict was contrary to law and evidence. By section 3033 of the code, in cases of injury to person or property, the presumption in all cases is against the company that the injury was the result of their negligence; and to relieve themselves of this presumption, it is incumbent upon them to show that they were in the exercise of all ordinary and reasonable care and diligence. This they must do. In this instance it was not done. And this presumption is applicable as well to an action founded upon their general liability, as to one founded on such a contract as that under which they contended these horses were shipped. They showed, from the appearance of the car only, that the train on which these horses were brought to Columbus had not been derailed. They showed how this injury might have happened, but not how it actually happened. It is to be borne in mind that not one of the employés in charge of this train was introduced as a witness on the trial to account for this injury. Certain presumptions of fact arise from the failure to introduce these parties, as has been repeatedly determined by this court, and once very lately. We therefore think that there was a case made out which would

authorize, though it did not absolutely demand, this ver-
dict. And we cannot say that there was any abuse of
discretion in overruling this motion for new trial, the pre-
sumption of negligence arising from the injury not being
overcome by the evidence in the case.

Judgment affirmed.