### 349. GEORGIA SOUTHERN & FLORIDA RY. CO. *v.* GREER.

1. Where a shipper signs a contract limiting the liability of the common carrier and reciting that it is made in consideration of a reduced rate of freight, such recital is prima facie true, and the burden is upon the shipper to prove the contrary. The burden was not successfully carried in this case.

.2. A carrier of live stock can, by special contract, be released from liability for injuries to such stock arising from named causes, and can as to these and all other incidents of transportation, by such contract, stipulate for liability only in the event of damage and loss by the gross negligence of its servants.

3. Even where there was a special contract shown, limiting the liability of the carrier of live stock, where the plaintiff proved that the stock was lost or injured while in the possession of the carrier, the law would raise a presumption of negligence against the carrier, which must be rebutted by proof showing the exercise of that degree of diligence required by the contract.

4. Where it appears that the cars in which the stock was carried were suitable; that the track was in good condition; that the equipments and appliances of the train were adequate, and that there was no fault or negligence in any respect on the part of the carrier in handling the stock, or in the running and management of the train, or in the exercise by the servants of the carrier of that degree of care demanded by the terms of its contract and required by the nature of the stock, any presumption of negligence would be fully rebutted, and the carrier would not be liable for loss or damage to the stock while in transportation.

5. The evidence in this case clearly showed that the death of the stock was due to the negligent manner in which it was loaded by the shipper. The verdict against the carrier must be set aside as without evidence to support it.

Action for damages, from Turner superior court—Judge Spence. October 22, 1906.

Argued May 14,—Decided October 3, 1907.

*John I. Hall, J. E. Hall, R. C. Jordan,* for plaintiff in error.

*H. C. McKenzie, T. R. Perry, J. H. Tipton,* contra.

HILL, C. J. This was a suit for ninety dollars, the alleged value of nine head of cattle which the defendant undertook to transport for the plaintiff from Dakota, Ga., to Cleveland, Fla. The specific allegations were, that the plaintiff delivered to the defendant, a common carrier, at Dakota, Ga., two hundred head of cattle in good order, to be transported to Cleveland, Fla.; that when the cattle arrived at the point of destination, there were only one hundred and ninety-one, and that nine had been lost or destroyed while in the possession of the defendant, and they were worth, at the point of destination in the market, ten dollars a head. There is no allegation of any specific negligence by the carrier, but only the general allegation of negligence. The defendant answered, denying all the material allegations of the petition. The jury found a verdict in favor of the plaintiff for the full amount, and defendant's motion for a new trial was overruled. The evidence for the plaintiff, briefly stated, made the following case: The two hundred head of cattle were delivered to the defendant by the plaintiff at Dakota, under a through bill of lading issued by the defendant, covering the shipment of said cattle from said point of delivery to Cleveland, Fla.; and when the cattle arrived at Cleveland, Fla., there were one hundred and ninety-one delivered to the consignee. The plaintiff relied for a recovery upon the presumption of liability which arises against the carrier under the statute of this State. Civil Code, §2264. In cases of loss, the presumption of law is against the common carrier, and no excuse avails him unless such loss was occasioned by the act of God, or the public enemies of the State.

The defendant introduced in evidence a live-stock contract of shipment, entered into between it and the plaintiff, whereby the plaintiff agreed to release the defendant from liability in case of loss or injury to the stock by reason of a number of named causes, to wit: "In consequence of overloading, heat, suffocation, fright, viciousness, . . and from all other damages incidental to railroad transportation which shall not be established to have been caused by the gross negligence or delinquency of any of the officers or agents of the said railway, having the stock in charge; and the owner or shipper is to look to the company on whose line

damage occurred for compensation for such damage." It was recited in this contract that the consideration therefor to the plaintiff was a reduced rate of freight. The plaintiff admitted the execution of this contract by him, but stated that he had not asked for a reduced rate and had received none. Besides the explicit recital in the contract signed by the plaintiff that the rate of freight was a reduced rate, there was written in said contract the letters "Rel.," which meant that the contract was a release shipment. These letters were also written across the bill of lading issued to the plaintiff by the defendant, which indicated that it was a release bill of lading; and in all such contracts, according to the evidence, there is a material difference in the rate charged, being less than when the shipment is made at the carrier's risk. The plaintiff further testified that he had been shipping cattle for ten or twelve years, and always under the release contract similar to the one he signed in the present case.

1. When a shipper signs a contract containing stipulations limiting the liability of the carrier, and reciting that such limitation was made because of a reduced rate of freight, the burden is upon him to show that the consideration therefor and therein recited was not true, and that as matter of fact he had received no consideration for such contract. This burden was not successfully carried by the plaintiff in this case, but the evidence clearly established the making by him of this special contract in question, and the giving of a reduced rate of freight as the consideration for the contract

2. The special contract was therefore valid under the laws of this State, and the plaintiff was bound by its terms. Civil Code, §2276; *Cooper* v. *R. & G. R. Co.,* 110 *Ga.* 662; *Georgia R.* v. *Spears,* 66 *Ga.* 485.

3. But the rule of presumption against the carrier, notwithstanding said special contract, still arose, and the burden was upon the company to rebut this presumption; but the contract diminished the onerous character of this burden, for under its terms the carrier was required to exercise only slight diligence, and was only liable for gross negligence. *Columbus R. Co.* v. *Kennedy,* 78 *Ga.* 653; *Cooper* v. *R. & G. R. Co.,* 110 *Ga.* 663.

4. As before stated, the plaintiff did not show by his evidence any specific negligence against the defendant, but only relied upon

the presumption against the carrier. Did the defendant, under the evidence in this case, meet and overcome this presumption up to the degree of diligence required of it under the terms of the special contract? Under the special contract, the railroad company was only liable for the gross negligence of its servants in connection with said shipment. The evidence introduced by the defendant was, in our opinion, entirely sufficient to rebut the presumption of negligence. It appeared from this evidence, that the cars in which the stock were transported were suitable for the purpose; that the track was in good condition; that the equipment and appliances of the train were adequate; that there was no collision, no sudden jerking of the cars, no delay in transportation; and that the agents of the carrier exercised all proper care in handling the stock. In addition to this evidence which certainly largely tended to relieve the carrier of the presumption of negligence, the facts further presented by a very large preponderance of the testimony at least show a cause for the loss of the cattle in the carelessness of the plaintiff himself. The cattle at the point of shipment were loaded on the cars by the shipper; he being responsible for the manner in which the loading was done. The cars into which the cattle were loaded were forty-two feet long. In one car were crowded fifty-six head, and in another fifty-seven head, and in the third eighty-seven head of cattle. The shipper said that this was, considering the size and condition of the cattle, not overcrowded. The testimony of his witnesses did not fully support this statement; and the overwhelming testimony of the defendant's witnesses was that the cattle were greatly overcrowded on these three cars. Besides this evidence, the physical condition of the cattle when the train reached Valdosta, Ga., showed much suffering, apparently from suffocation, due to the crowded condition of the cars; and when the train reached Jasper, Fla., this physical condition induced the agents of the company, in order to relieve the cattle, to unload two of the cars and reload the cattle into three cars.

5. We think that the conclusion is irresistible, from all the evidence in this case, that the death of the cattle for which suit was brought could only have been reasonably attributed to the manner in which they were loaded, and that the defendant fully exercised, in connection with the transportation of the cattle, that

degree of care which the terms of its contract with the plaintiff required. The learned judge of the trial court submitted the issues made by the pleadings and evidence, fairly, fully, and aptly to the jury. We are constrained to believe that the verdict was based upon the idea that the defendant had not rebutted the presumption of liability against it under the general law, and that the special contract, limiting such liability and which was clearly proved, was not considered by them. Even under the general law, certain exceptions have grown up in favor of common carriers in the case of live-stock carriage, arising from the nature of the property transported. *Cooper* v. *R. Co.,* supra; 5 Am. & Eng. Enc. L. (2d ed.) 443. The cattle that died in this case while in transportation had no physical marks indicating injuries resulting from any violence. The evidence showed that the servants of the carrier exercised that degree of care which the nature of the property required; and if the facts did not, in our opinion, point out as the cause of the death physical injury due to overcrowding by the shipper, the only rational theory under the evidence would be that they died from some natural disease superinduced and aggravated by the crowded condition, and not from any want of vigilance and care by the servants of the defendant.

We think the verdict should be set aside because without any evidence to support it.          *Judgment reversed.*