### 4866.  ATLANTIC COAST LINE RAILROAD COMPANY *v.* THOMASVILLE LIVE STOCK COMPANY.

1. There is nothing in the act of Congress known as the Hepburn act, as amended by the Carmack amendment, which will prohibit a shipper of goods in interstate commerce over the lines of several carriers from bringing suit, under the provisions of section 2752 of the Civil Code, against the last carrier who received the goods as "in good order," for damages on account of loss of or damage to the goods.

2. The purpose of the act of Congress referred to in the preceding headnote was to fix the liability of interstate carriers, and, in so doing, to put an end to the diversity of regulation under State laws on the subject.  The act of Congress is paramount upon the subject with which it purports to deal, and supersedes all State laws upon the same subject.  It follows that where suit is brought for loss of or damage to goods transported in interstate commerce, the rule of liability as prescribed by the Federal act is applicable, whether the suit be brought against the initial carrier or against one of the succeeding carriers.

3. Where suit is brought against a connecting carrier in interstate commerce for damage to goods delivered to it by the preceding carrier, a prima facie case is made for the plaintiff by proof of the reception of the goods by the defendant and of their delivery in a damaged condition. Upon such proof the presumption arises that the goods were damaged in consequence· of the negligence of the carrier sued. There is nothing in the act of Congress fixing the liability of interstate carriers for loss of or damage to goods which would relieve them from this common-law presumption. Whether in such a suit, upon proof that the defendant receipted for the goods as "in good order," the shipper would, under the provisions of the act of Congress, be entitled to the benefit of the conclusive presumption arising under the provisions of section 2752 of the Civil Code is not decided, since there was no proof in the present case that the defendant actually received the goods as "in good order."

4. The_ common-law presumption against the carrier is rebuttable; and where a connecting carrier is sued for damage to goods upon the theory that the goods were injured by reason of improper and negligent handling of the train, the presumption arising from proof of the reception of the goods by the defendant and of their delivery in a damaged condition is completely rebutted by affirmative proof by the defendant that it was not guilty of negligence in the manner in which the train was handled, and that the injury must have resulted from some cause for which the initial carrier and its agents were exempted from liability, under the contract of affreightment. In the present case the evidence demanded a finding in favor of the defendant, and it was error to award a judgment in favor of the plaintiff.

DECIDED JULY 15, 1913.

Action for damages; from city court of Thomasville—Judge W. H. Hammond. March 18, 1913.

*J. H. Merrill, Bennet & Branch, Russell Snow,* for plaintiff in error.

*Fondren Mitchell,* contra.

POTTLE, J. The plaintiff made a through contract of affreightment with the Louisville & Nashville Railroad Company to transport a car of live stock from a station in the State of Illinois to Thomasville, Georgia, over the line of the contracting company and its connecting carriers. The last carrier was the Atlantic Coast Line Railroad Company, which delivered the stock at destination. One of the horses in the shipment was bruised and injured, as a result of which it died, and the plaintiff brought suit against the Atlantic Coast Line Railroad Company, as the last connecting carrier which received the live stock as "in good order." The petition alleged, that the injury and subsequent death of the horse was due to the careless and negligent handling of the car by the defendant company; that when the car left the initial point of ship-

ment, the stock were in perfect condition, and were so accepted by the initial carrier. The contract of affreightment was in the usual form and exempted the carriers from liability resulting from various causes other than negligence in transportation. Amongst other things, the carrier was exempted from liability on account of injuries received by the animals in consequence of being vicious or of unruly propensities; and provided that the shipper would furnish at his own expense such bedding and other suitable appliances in the car as would enable the animals to stand securely on their feet. The case was submitted to the judge without the intervention of a jury. There was no proof that the defendant had received the freight as "in good order." The plaintiff rested his case upon proof of delivery to the initial carrier in good order, and the injury to the horse while being transported from the initial point of shipment in Illinois to destination at Thomasville, Georgia. The evidence for the defendant showed that the contract of affreightment was made in consideration of a reduced rate of freight. It offered also the testimony of the conductor and other persons who had handled the shipment after delivery to the defendant that the defendant was not guilty of any negligence in reference to the manner in which the train was handled, and that the stock were transported in the usual manner and without negligence on the part of the defendant. The trial judge entered judgment for the plaintiff, and the defendant excepted.

1. In the bill of exceptions it is recited that counsel for the plaintiff stated in his place that the suit was brought under the provisions of section 2752 of the Civil Code, against the last connecting carrier which received the shipment "in good order." The point is made that as the shipment was made in interstate commerce, suit could not be maintained under the above-mentioned section of the code against the last carrier, but should have been brought against the initial carrier, under the provisions of the act of Congress of June 29, 1906, known as the Hepburn act (34 Stat. 584, U. S. Comp. St. Supp. 1911, p. 1288), and the Carmack amendment to that act. The act of Congress was under consideration by this court in the case of *Southern Pacific Company* v. *Crenshaw,* 5 *Ga. App.* 675 (63 S. E. 865). It was there held that, "While the Federal statute fixing the liability of the initial carrier to the holder of the bill of lading expressly preserves in favor of

the shipper or owner of the goods all remedies and rights of action otherwise existing, yet where the terms of the statute are directly applicable, they become the paramount law on the subject, and all State laws to the contrary are pro tanto superseded." In discussing the question Judge Powell, speaking for the court, said (p. 685) : "In fine, the enactment, so far as it is applicable to the present case, is merely a declaration by Congress, the law-making power having paramount jurisdiction of that subject, that as to interstate shipments all contracts tending to vary the carrier's common-law liability, of responsibility to destination on a through bill of lading, shall be void. Its effect is not to give the shipper directly and immediately any new right, but to cut off from the carrier a defense it otherwise would have, to take away from it a means of avoiding what otherwise would be only a prima facie liability." It was further noted in the opinion in that case that the Hepburn act was declaratory of the common law, in so far as it imposed liability upon the initial carrier resulting from his acceptance of the shipment for through carriage; and derogatory of the common law, in so far as it enacted that the carrier could not exempt himself from the liability imposed by the act by any contract, receipt, rule or regulation. In fine, it was held in that decision that as to all transactions covered by the act it was the law paramount, binding upon the States and superseding all State statutes dealing with the same subject-matter.

Subsequently to the decision of this court in *Southern Pacific Company* v. *Crenshaw,* supra, the case of Adams Express Co. *v.* Croninger, 226 U. S. 491 (33 Supreme Ct. 148), was decided by the Supreme Court of the United States. In that decision the court took occasion to approve the following language of this court in the *Crenshaw* case, in which this court undertook to set forth some of the reasons which brought about the passage of the national law and made it paramount. "Some States allowed carriers to exempt themselves from all or a part of the common-law liability, by rule, regulation, or contract; others did not; the Federal courts sitting in the various States were following the local rule, a carrier being held liable in one court when under the same state of facts he would be exempt from liability in another; hence, this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically

impossible for a shipper engaged in a business that extended beyond the confines of his own State, or for a carrier whose lines were extensive, to know without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one State to another. The congressional action has made an end to this diversity; for the national law is paramount and supersedes all State laws as to the rights and liabilities and exemptions created by such transactions. This was doubtless the purpose of the law; and this purpose will be effectuated, and not impaired or destroyed, by the State court's obeying and enforcing the provisions of the Federal statute where applicable to the facts in such cases as shall come before them."

The precise ruling made in Adams Express Co. *v.* Croninger, supra, was that while, under the provisions of the act of Congress, the carrier could not exempt himself from negligence, he might, by a fair and reasonable exemption, limit the amount recoverable by the shipper to an agreed valuation made for the purpose of obtaining a reduced rate of freight. In discussing generally in that case the subject of the effect of the act of Congress, Mr. Justice Lurton, who delivered the opinion of the court, used the following language: "That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all State regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the State upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist. Northern Pacific Ry. *v.* State of Washington, 222 U. S. 370 [32 Sup. Ct. 160, 56 L. ed. 237]; Southern Railway *v.* Reid, 222 U. S. 424 [32 Sup. Ct. 140, 56 L. ed. 257]; Mondou *v.* Railroad, 223 U. S. 1 [32 Sup. Ct. 169, 56 L. ed. 327, 38 L. R. A. (N. S.) 44]. To hold that the liability therein declared may be increased or diminished by local regulation or local views of public

policy will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed are covered in full; and though there is no reference to the effect upon State regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

The question in the present case is, whether the act of Congress, as interpreted by the Supreme Court of the United States, so far supersedes all State legislation as to prohibit a shipper, who has been injured by loss of or damage to goods carried in interstate commerce, from proceeding directly against one of the connecting carriers which either actually or presumptively received the goods as "in good order." Indeed, the act itself contains a provision that nothing in it "shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Here is an express declaration by Congress, preserving to the shipper all remedies existing under State laws; and this, of course, must mean all remedies which are not in conflict with that prescribed by the national act. The act purports to regulate the carriage of goods in interstate commerce and to fix the liability of the carrier in case of loss of or damage to the goods, but it does not interfere with or abrogate any remedy which the shipper has under State law. Section 2752 of our Civil Code, authorizing suit against the last carrier receiving goods "as in good order," is not, as applied to shipments from beyond the State, a regulation of interstate commerce, so as to be repugnant to the commerce clause of the constitution of the United States. *Kavanaugh* v. *Southern Ry. Co.*, 120 *Ga.* 62 (47 S. E. 526, 1 Ann. Cas. 705). The statute is designed merely to make it more certain that railroad companies will perform the duty, resting upon them as public carriers, to use the utmost care and diligence in the transportation of goods. There is no provision in the act of Congress that suit against the initial carrier shall be the exclusive remedy for the injured shipper; there is nothing in that act that either expressly or by necessary implication would prohibit the shipper

from proceeding against one of the initial carrier's agents, where the goods have been damaged while being transported over the agent's line. Under the law of this State, the initial carrier who makes a through contract of affreightment may be sued for failure to deliver at destination; or the initial carrier's agent, a connecting carrier, may be sued for any injury or damage which occurs to the goods while being transported over the latter's line. The act of Congress provides merely for suit against the initial carrier, and does not take away the right of the shipper to proceed in a proper case against a connecting carrier.

2. A through contract of affreightment, made by one carrier, to transport to destination over the lines of several carriers, is binding upon all of the succeeding carriers to the same extent as it is upon the initial carrier. In such a case the connecting carriers are merely the agents of the initial carrier, and, when sued, are entitled to the benefit of any contractual exemption which the initial carrier would have been allowed to plead had he been sued for the failure to transport safely. *Cranor* v. *Southern Ry. Co.*, ante, 86 (78 S. E. 1014). The act of Congress was designed to put an end to diversity of regulation and ruling by the State authorities upon the question of liability of an interstate carrier for its failure to transport goods in accordance with its contract. The provisions of the act, where applicable, should be applied as well where the suit is against the initial carrier's agent as where brought directly against the initial carrier. So that a suit under our statute against the last connecting carrier in no wise destroys the harmony which was intended to be brought about by the act of Congress. If the goods are shipped in interstate commerce, then the act of Congress applies without reference to which carrier the shipper elects to proceed against to recover any damages which he has sustained. If he elects to proceed against the last connecting carrier, the latter can plead any contractual exemption which the initial carrier might be entitled to rely on. And as to this matter the Federal act and the decisions of the Supreme Court of the United States construing it are binding upon the State courts, without reference to the carrier who may be proceeded against for any damage which may have been sustained. The act of Congress created no new remedy. The shipper could always sue the initial carrier, but the Federal act was designed merely to fix the liability of the carrier of goods in inter-

state commerce and make the rule of liability uniform through-
out the several States.  As to this matter the act of Congress is
paramount and the decisions of the Federal Supreme Court are
controlling.  For example, the courts of this State have always held
that a mere statement of value of goods delivered to a carrier for
transportation, although the shipper received a reduced rate of
freight, is a mere arbitrary preadjustment of damages and not
binding upon the shipper, and that he could recover the full value
of the goods lost by the carrier, in the absence of a bona fide agree-
ment in reference to value.  In the act of Congress as construed
by the Supreme Court of the United States in the Adams Express
Company case, supra, and in several later decisions, such a stipula-
tion in a contract of affreightment is binding upon the shipper.
As to this and similar matters affecting the question of liability of
an interstate carrier, the decisions of the Supreme Court of the
United States must be regarded as controlling.

3.  There is neither allegation nor proof that the defendant com-
pany actually received the live stock as "in good order."  Upon
proof of the reception of the goods by it for transportation and of
delivery at destination in a damaged condition, a presumption arose
that the injury to the stock was the result of the defendant's negli-
gence.  If the suit is predicated upon the carrier's common-law
obligation to transport safely, the defendant is presumed to have
received the goods in good order; but this presumption is not con-
clusive and may be rebutted, and the carrier may be relieved of its
effect, by proof that it was not in fact negligent.  If the carrier
actually receipted for the goods as "in good order," this presump-
tion of negligence becomes conclusive on proof of injury to the
stock.  *Hartwell Ry. Co.* v. *Kidd,* 10 *Ga. App.* 771 (74 S. E. 310).
It is argued that, if the provisions of the act of Congress are appli-
cable, there is no presumption against the carrier.  There was no
proof in the present case that the defendant actually receipted for
the goods as "in good order;" and hence it is unnecessary to in-
quire whether, if this had been done, the shipper would, under the
act of Congress, be entitled to the benefit of the conclusive presump-
tion arising under the State statute.  There is certainly in the act
of Congress nothing designed to relieve the carrier of the pre-
sumption of the common law.  Under that act, as well as under
the State law, the shipper makes out a prima facie case by proof

of delivery in good order and of subsequent loss of or damage to the goods, and the burden of proving that it was not guilty of negligence, and that damage resulted from some act for which it was not liable under the law, or under some contractual exemption lawfully made by the shipper, is upon the defendant.

4. The plaintiff elected to sue the last carrier. It relied upon proof that the goods were received by the carrier, and that one of the horses was delivered by it in a damaged condition. This raised a presumption against the defendant, and, if nothing more had appeared, would have authorized a recovery in behalf of the plaintiff. But the defendant completely rebutted the presumption which arose against it upon the prima facie case made by the plaintiff. The negligence relied on in the petition was the improper handling of the car upon which the injured horse was being transported. Proof of the reception of the horse by the defendant and of its delivery in a damaged condition raised a presumption that the defendant was negligent as alleged in the petition. But this presumption was rebutted by the testimony for the defendant, which completely exculpated the defendant from any charge of negligence in handling the train, and demanded a finding that the injury to the horse was due to some cause for which, under the contract of affreightment made with the initial carrier, it and its agents were exempted from liability. Upon the merits the case is controlled by the decision of this court in *Georgia Southern & Florida Ry. Co.* v. *Greer, 2 Ga. App.* 516 (58 S. E. 782), where it was held that "Where it appears that the cars in which the stock was carried were suitable; that the track was in good condition; that the equipments and appliances of the train were adequate, and that there was no fault or negligence in any respect on the part of the carrier in handling the stock, or in the running and management of the train, or in the exercise by the servants of the carrier of that degree of care demanded by the terms of its contract and required by the nature of the stock, any presumption of negligence would be fully rebutted, and the carrier would not be liable for loss or damage to the stock while in transportation." The defendant was liable only for the consequences of its own negligence; and, as the evidence demanded a finding that it was not negligent as alleged in the petition, no recovery could be had against it. If the suit had been brought against the initial carrier, it would have been liable not

only for its own negligence, but for the negligence of its agents, the succeeding carriers. Having elected to sue the last connecting carrier, upon the theory that its negligence caused the damage, the plaintiff must take the consequences of proof by the defendant that it exercised due care and diligence in handling the stock after they were delivered to it. The evidence demanded a finding in favor of the defendant, and the court erred in awarding judgment in favor of the plaintiff. 　　　　*Judgment reversed.*