*Bunn & Trawick,* for plaintiff in error:

*J. A. Wright, solicitor, E. S. Ault,* contra.

---

### 6032. SOUTHERN RAILWAY COMPANY *v.* BENNETT.

1. Rights and remedies conferred by existing State laws, where a shipment accepted by a carrier for interstate transportation has been lost, injured, or damaged, were not continued in force by the proviso in what is known as the Carmack amendment of June 29, 1906 (34 Stat. 595, c. 3591, pars. 11, 12) to the act of Congress of February 4, 1887, known as the Hepburn act, 24 Stat. 386, c. 104, § 20 (U. S. Comp. Stat. 1913, § 8592), that nothing therein contained shall deprive the holder of the receipt or bill of lading of any remedy or right of action which he has

under existing law. This proviso preserves only any right or remedy that the holder may have had under existing Federal law at the time of his action. Consequently, the rule announced by this court in *Atlantic Coast Line Railroad Co.* v. *Thomasville Live Stock Co.*, 13 Ga. App. 102 (78 S. E. 1019), is unsound, and upon review is expressly overruled.

2. A suit for damages based upon the provisions of section 2752 of the Civil Code of 1910 can not be maintained against the last of several connecting carriers, if the loss or damage to the shipment occurred in the course of interstate transportation; for under the provisions of the Carmack amendment, supra, the initial carrier alone is liable for damage to interstate shipments, and under the Federal regulation of interstate commerce (which supersedes all State regulation upon the same subject) the remedy against the initial carrier is exclusive.

3. The action being against the last connecting carrier, to recover for damage to an interstate shipment, a motion to dismiss it, upon the ground that the Federal regulation, contained in the Hepburn act and the Carmack amendment thereto, is paramount and exclusive of State regulation, and that under the Federal statute the initial carrier alone is liable for any loss, damage, or injury to the shipment caused by any transportation company over whose line the shipment might have passed, should have been sustained.

DECIDED SEPTEMBER 22, 1915.

Action for damages; from municipal court of Macon—Judge Daly. October 1, 1914.

*Harris & Harris, Mallary & Wimberly,* for plaintiff in error.

*Feagin & Hancock,* contra.

RUSSELL, C. J. The suit was for damage to personal property alleged to have been shipped from New York in the early part of October, 1913, and brought to Macon, Ga., about the 21st day of that month. As appears from the petition, the defendant is the last of the connecting line of carriers which handled the shipment in transportation. It is apparent therefore that the petition was based upon the "last-connecting-line" statute of this State (Civil Code, § 2752). The defendant filed a general demurrer to the petition at the first term, and later amended its demurrer and filed a motion to dismiss the action, upon the ground that it could not be maintained under the statute cited above, because the action concerned an interstate shipment originating in the State of New York, and that the statute is repugnant to the act of Congress of February 4, 1887, known as the Hepburn act, and the Carmack amendment thereto of June 29, 1906. It is contended that the act of Congress supersedes all State regulations, and that the shipper is relegated to a suit against the initial carrier. The court

overruled the demurrers and the motion to dismiss, and exception is taken to this judgment.

The defendant in error contends that the question raised by the bill of exceptions was decided adversely to the contentions of the plaintiff in error in *Atlantic Coast Line Railroad Co.* v. *Thomasville Live Stock Co.*, 13 *Ga. App.* 102, 111 (78 S. E. 1019). In *Ohlen* v. *A. & W. P. R. Co.*, 2 *Ga. App.* 323 (58 S. E. 511), it was held: "A common carrier, sued on its common-law liability for loss or injury of goods received by it for transportation, may relieve itself of liability by showing that the goods were damaged before it received them. Where it does not appear either that the carrier received the goods as in bad order or that they were in bad order when received, the presumption is that they were in good order, and the burden of proof is upon such carrier to show that it was free from negligence, and that its negligence did not cause or contribute to the damage." This states a well-settled principle of presumptive evidence, which, in many States was by statute made a presumption of law; but no Federal question was raised in that case. In the *Thomasville Live Stock Company* case, supra, the decision was based upon the proviso of the Carmack amendment to the Hepburn act, section 20, that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action he has under existing law." In deciding that case this court proceeded upon the theory that this proviso itself preserves such rights of action as that conferred by section 2752 of the Civil Code. Speaking for the court, Judge Pottle, after stating that "the act itself contains a provision that nothing in it 'shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law,'" says: "Here is an express declaration by Congress, preserving to the shipper all remedies existing under State laws; and this, of course, must mean all remedies which are not in conflict with that prescribed by the national act." And he then proceeds to argue that section 2752 of the Code is not a regulation of interstate commerce repugnant to the commerce clause of the constitution of the United States, and calls attention to the fact that in the act of Congress there is no provision that a suit against the initial carrier shall be the exclusive remedy for the injured shipper, and holds that there is nothing in the act to prohibit a shipper from proceeding against

one of the carrier's agents where the goods have been damaged while being transported over the agent's lines. It is true, as was said in that case, that "under the law of this State, the initial carrier who makes a through contract of affreightment may be sued for failure to deliver at destination; or the initial carrier's agent, a connecting carrier, may be sued for any injury or damage which occurs to the goods while being transported over the latter's line;" and that the act of Congress providing for suits against the initial carrier perhaps does not take away the right of a shipper to proceed against the connecting carrier when it is shown by proof to have actually committed the injury and caused the damage to a shipment; but it is evident that in passing upon the point raised in that case this court overlooked the ruling of the Supreme Court of the United States upon the precise point,—a ruling which by the provisions of our law is paramount and controlling. The ruling in the *Thomasville Live Stock Company* case, as already stated, was based upon the theory that the remedies conferred by State statutes were expressly preserved (p. 107). On the contrary, the Supreme Court of the United States, in the case of Adams Express Co. *v.* Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257), held that the proviso of section 7 of the Carmack amendment of June 29, 1906, preserves only such rights or remedies as the holder of the receipt or bill of lading had under existing Federal law at the time of his action. In discussing this point Justice Lurton, speaking for the Supreme Court, said: "It has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that State legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such carrier conferred by existing law. This view is untenable. It would result in the nullification of the regulation of a national subject, and operate to maintain the confusing and diverse regulation which it was the purpose of Congress to put an end to. What this court said of section 22 of this act of 1887 in the case of Texas & P. Ry. *v.* Abilene Cotton Mills, 204 U. S. 426 (27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075), is applicable to this contention. It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in § 20,

that it was 'evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the interstate-commerce act or by State statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act.' Again, it was said of the same clause, in the same case, that it could 'not in reason be construed as continuing in a shipper a common-law right the existence of which would be inconsistent with the provisions of the act. In other words, the act can not be said to destroy itself.' To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing State laws, for the latter view would cause the proviso to destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable." It is therefore evident that the ruling in the *Thomasville Live Stock Company* case, supra, on this point was unsound, and, on review, it is expressly overruled.

2. That portion of the Carmack amendment which is applicable to the question raised by the demurrer and the motion to dismiss is as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt, or bill of lading shall be entitled to recover

from the common carrier, railroad, or transportation company on whose lines the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." The purpose of the Carmack amendment, which was passed by Congress in the exercise of its constitutional power to regulate commerce among the States, including the power to define the liability of carriers for loss, delay, injury or damage to interstate shipments arising under contracts for interstate transportation, was to put an end to the diversity of State regulation, and the consequent confusion existing previous to the Carmack amendment. *Southern Pacific Co.* v. *Crenshaw,* 5 *Ga. App.* 675 (63 S. E. 865); Adams Express Co. *v.* Groninger, supra. In the latter case Justice Lurton referred to the paramount character of the Federal legislation on subjects falling under the powers given to Congress by the constitution, and stated what is now recognized as a basic principle—that appropriate legislation by Congress supersedes all State legislation upon the same subject—as follows: "That the legislation supersedes all legislation and powers of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all State regulation with reference to it." To the same effect see C., B. & Q. R. Co. *v.* Miller, 226 U. S. 513 (33 Sup. Ct. 155, 57 L. ed. 323); K. C. S. R. Co. *v.* Carl, 227 U. S. 639 (33 Sup. Ct. 391, 57 L. ed. 863); M. & T. R. Co. *v.* Harriman, 227 U. S. 637 (33 Sup. Ct. 397, 57 L. ed. 690); C. & W. C. Ry. Co. *v.* Varnville Furniture Co., 237 U. S. 597 (35 Sup. Ct. 715, 59 L. ed.).

Speaking of the effect of the amendment, Justice Day, in St. Louis Southwestern Ry. Co. *v.* Alexander, 227 U. S. 218 (33 Sup. Ct. 245, 57 L. ed. 486, Ann. Cas. 1915B, 77) said: "The provisions of the amendment had the effect of facilitating the remedy of the shipper by making the initial carrier responsible for the entire carriage." And in Atlantic Coast Line Railroad Co. *v.* Riverside Mills, 219 U. S. 186 (31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A.

(N. S.) 7), it was said: "The rule is adapted to secure the rights of the shipper by securing unity of transportation with unity of responsibility. The regulation is one which also facilitates the remedy of one who sustains a loss, by localizing the responsible carriers." It may be true, as urged by counsel for the defendant in error, that this construction of the Carmack amendment will sometimes impose a hardship upon a consignee of shipments, especially if the amount involved be small, by imposing upon him the necessity of pursuing his remedy in a foreign jurisdiction and under such difficulties and at such expense as practically to deprive him of his rights. But in view of the provision of the Carmack amendment which makes "the initial carrier responsible for the entire carriage," it is easy to see that, as construed by the Supreme Court of the United States, the remedy against the initial carrier is exclusive of any remedy against other connecting carriers.

Analyzing section 20 it (1) affirmatively requires the initial carrier to issue "a receipt or bill of lading therefor" when it receives "property for transportation from a point in one State to a point in another:" (2) such initial carrier is made "liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it;" (3) it is also made liable for any loss, damage, or injury to such property caused by "any common carrier, railroad or transportation company, to which such property may be delivered, or over whose line or lines such property may pass;" (4) it affirmatively declares that "no contract, receipt, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." It therefore seems plain that Congress has taken complete possession of the subject of an interstate carrier's liability for shipments, and that consequently section 2752 of the Civil Code, a statute similar in so far as the subject-matter to which it relates is concerned, but wholly repugnant in remedy provided, must yield precedence to the Federal enactment. The instant case is brought clearly under the connecting-line statute of Georgia. The Georgia law provides that the shipper may sue the last connecting carrier, and such carriers "shall settle among themselves the question of ultimate liability." The Federal law provides that the shipper shall sue the initial carrier, and the carriers shall settle among themselves the question of ultimate liability. In a state of such repugnancy it would seem to us

that the Federal law must prevail, even if it had not been expressly decided in C. & W. C. Ry. Co. *v.* Varnville Furniture Co., supra, that the Carmack amendment "requires the initial carrier to issue a through bill of lading, and makes it liable for all damage anywhere in the route." Under the ruling in that case, section 2752 would be ineffective even if it had been passed in aid of interstate commerce; though, of course, it was passed in advance of the congressional legislation and to enforce a State policy. As said in that case, "When Congress has taken a particular subject-matter in hand, coincidence is as ineffective as opposition, and the State law is not to be declared as help because it attempts to go further than Congress has seen fit to go. We conclude, therefore, that a suit for damages based upon the provisions of section 2752 of the Civil Code can not be maintained against the last of several connecting carriers, if the damage alleged to have been sustained was consequent upon loss or damage to a shipment which occurred in the course of interstate transportation; for under the provisions of the Carmack amendment the initial carrier alone is liable for damage to interstate shipments, and under the Federal regulation of interstate commerce (which supersedes all State regulation upon the same subject) the remedy against the initial carrier is exclusive.

3. The demurrer was a mere general demurrer, but the amendment to the demurrer, filed as a motion to dismiss, presented the following points: (*a*) that the shipment was an interstate shipment, controlled by the Carmack amendment to the Hepburn act; (*b*) that the act of Congress was paramount, and superseded all State statutes with reference to interstate shipments, and for that reason the provisions of section 2752 of the Civil Code, authorizing suits against the last connecting carrier receiving goods as in good order, is void so far as it applies to shipments beyond the State; (*c*) that section 2752 of the Civil Code is repugnant to the Hepburn act as amended by the Carmack amendment, whereby (*d*) the plaintiff's remedy is confined to an action against the initial carrier which issued the bill of lading. It is plain that the petition is based entirely upon the provisions of section 2752, supra. It is nowhere alleged that the Southern Railway Company damaged the goods after they came into its possession. It may be that a different case might have been presented under an allegation that the goods were injured or damaged on the line of the defendant or

by its servants. Though we are not now inclined so to hold, it might be that by alleging that the damage was inflicted by the defendant, a tort would be set forth for which the plaintiff could sue, but in the state of the pleadings the motion to dismiss should have been sustained.       *Judgment reversed.*