### 10939.  HINES, director-general, *v.* JACKSON & CO.

Where live stock are shipped under a special contract which provides, as in this case, that the shipper "will indemnify and save harmless the railway company against any and all claims of any persons against the railway company arising out of loss or damage to said live stock while being transported, except such liability as shall accrue by reason of the gross negligence of the railway company, its servants and employees," the carrier is required only to exercise slight diligence. The exercise of such diligence was shown and the presumption against the carrier rebutted by the evidence in this case. The verdict for the plaintiff was therefore unauthorized, and the trial judge erred in overruling the motion for a new trial.

DECIDED APRIL 14, 1920.

Action for damages; from Wilkes superior court — Judge Walker. September 5, 1919.

Certain mules were shipped from Atlanta, Ga., to Washington, Ga., at a special rate lower than the regular tariff rate, and under a special contract which provided that "the party of the second part, in consideration of the special rate hereinbefore provided and of the transportation of said animals as aforesaid, hereby covenants and agrees that he will indemnify and save harmless

the railway company against any and all claims of any persons against the railway company arising out of loss or damage to said live stock while being transported, except such liability as shall accrue by reason of the gross negligence of the railway company, its servants and employees." One of the mules was found dead, with his neck broken, in the car, while at Barnett, where the car containing the mules was transferred from the main line of railway to the Washington branch. The station-agent at Barnett, who found the mule dead in the car, testified in part as follows: "This car was not moved at all between the time it was placed on the side-track and the time it was coupled to be placed in the train going from Barnett to Washington. Between the time of arrival of the car at Barnett and the time of its departure from Barnett it was not subjected to any rough handling. In fact it was not moved at all until coupled to and pulled in Washington-branch train by Conductor Oslin. There were no trains on this particular track while the car was stopped at Barnett. I was station-agent and was in position to observe the movements of trains had there been any." The conductor in charge of the train from Atlanta to Barnett testified: "I made an examination of this car of live stock before my train left Atlanta, by looking at the stock from the outside of the car, and all the animals were standing and they appeared to be in good condition. I looked at the animals at every stopping place en route, and always found the stock standing and apparently in good condition. When my train reached Barnett this car was placed on the side-track and left for the Washington branch. I did not examine the stock when we reached Barnett. In the journey from Atlanta to Barnett nothing unusual took place in reference to the movement and handling of the train. Neither did my train nor the car [containing the mules] meet with any accident, nor was there any collision or derailment of the car inquired about, or of the train, or any portion of the train; nor, during the journey inquired about, was there any unusual, violent or unnecessary movement or jerk, stop, or starting of the train. In the process of taking this car out of the train at Barnett and placing it on the side-track at that point this car was not subjected to any rough treatment or rough handling, nor did

it have any collision or derailment, nor was it started, stopped, or jerked in any unusual, violent, or unnecessary manner."

There was a verdict for the plaintiff, followed by a motion for a new trial, which was overruled.

*Cumming & Harper,* for the plaintiff in error.

*C. E. Sutton,* contra.

BLOODWORTH, J. (After stating the foregoing facts.)

The special contract in this case is valid under the laws of Georgia, and the plaintiff is bound by its terms. *Georgia Southern & Florida Railway Co.* v. *Greer,* 2 *Ga. App.* 516 (2), 518 (2) (58 S. E. 782), and cases cited. "The fact that there was in the present case a special contract would not take it out of the rule, that after the plaintiff has proved that the stock were lost or injured while in the possession of the defendants the law would raise a presumption that the defendants were at fault. Such a presumption would in such a case arise, and the burden would then be placed upon the defendants to show that they had exercised the degree of diligence which the contract required. *Columbus Railroad Co.* v. *Kennedy,* 78 *Ga.* 653." *Cooper* v. *Raleigh & Gaston R. Co.,* 110 *Ga.* 664 (36 S. E. 240). What degree of diligence on the part of the defendant was required by the contract? "The rule of presumption against the carrier, notwithstanding said special contract, still arose, and the burden was upon the company to rebut this presumption; but the contract diminished the onerous character of this burden, for under its terms the carrier was required to exercise only slight diligence and was only liable for gross negligence. *Columbus R. Co.* v. *Kennedy* [supra]; *Cooper* v. *R. & G. Co.* [supra]." *Georgia So. Ry. Co.* v. *Greer,* supra. No evidence was introduced by the plaintiff to contradict the evidence of the defendant in reference to the care with which the train was handled. Does the evidence show that the railroad has exercised the diligence required of it under the contract,— slight diligence,— and thus rebut the presumption against it? We think so. This being true, the court erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*