## Southern Railway Company, et al. v. Avey, et al.

(Decided February 2, 1917.)

### Appeal from Hickman Circuit Court.

1. Carriers—Action fgor Damage—Summons.—In an action against two carriers for loss and damage to a car load of corn, where the action was brought in the county of the residence of the initial carrier, and summons is served upon the agent of the subsequent carrier in another county, under the provisions of section 73, Civil Code, providing that an action may be brought in the county in which the contract is made: Held that the contract being made in the county of the residence of the initial carrier, and the initial carrier being the agent of the subsequent carrier the subsequent carrier was properly held to be before the court upon such service of summons, and the motion of the subsequent carrier to quash the return on the process was properly overruled.

2. Carriers—Initial Carrier Agent of Subsequent Carrier.—Where property is delivered to a carrier to be shipped over the lines of several connecting carriers, the initial carrier in making the contract of shipment, and in accepting the property for shipment over said lines of railroad, acts as the agent of the subsequent carrier, in making the contract, and not as the agent of the shipper.

3. Carriers—Bankruptcy of Shipper—Purchaser of Book Accounts May Sue For Loss.—Where, after the damage was done to the corn shipped, the person who owned and shipped the corn was adjudged a bankrupt, and his "book accounts" were sold by order of the

bankruptcy court, the person purchasing the "book accounts" may bring an action for loss and damage where the bankrupt and the trustee in bankruptcy join in said action as party plaintiffs and assist in the prosecution of the claim since by such action they will be forever barred from taking any further action on the claim.

4.  Carriers—Responsibility of Initial Carrier.—Under the "Carmack Amendment," act of Congress, 1906, the initial carrier is responsible to the shipper for the entire loss or damage, whether occurring upon its line or the line of a subsequent carrier, but the subsequent carrier is liable to the initial carrier for whatever loss or damage might occur on its line, or, the shipper may recover from a subsequent carrier the loss or damage actually occurring while goods or property are in its possession, but in such case the burden is upon the shipper to prove the actual loss or damage done by such carrier.

JOHN E. KANE and E. T. BULLOCK for appellants.

J. M. BRAMMAL for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Overruling motion for appeal as to Mobile & Ohio Railroad Co. and sustaining motion for appeal of Southern Railway Co., reversing.

The Southern Railway Company and Mobile & Ohio Railroad Company have prayed an appeal in this court, from a judgment for $449.55 rendered in the Hickman Circuit Court in favor of A. K. Avey, &c., and rely upon section 950, Ky. Statutes and several grounds stated in their brief. The facts are as follows: In January, 1913, C. H. Breshears, one of the plaintiffs in this action, shipped from Columbus, Kentucky, a consignment of 750 bushels of dry shelled corn, in bags over the Mobile & Ohio Railroad, Southern Railway, Western Railway of Alabama, and Central of Georgia Railway, to Athens, Georgia, consigned to himself, but with instructions to notify Roland Grocery Company, Athens, Georgia, of the shipment, bill of lading attached. The whole distance covered by the shipment from Columbus, Hickman county, Kentucky, to Athens, Georgia, the way the consignment was routed is something over 400 miles. It was on the road about 14 days going.

Roland Grocery Company declined to receive the corn at Athens, Georgia, because of its damaged condition. Thereupon the shipper, Breshears, notified the

Central of Georgia Railway to return the corn to Columbus, Ky., and the corn was accordingly returned in the same car in which it was carried on its outbound trip. It was loaded in a refrigerator car at Columbus, Ky. This car was furnished by the defendant, Mobile & Ohio Railway Company, and was not a fit car in which to carry such a consignment. Before B'reshears could load his corn into the car, he had to remove therefrom about ten wagon loads of rotten bananas, a quantity of ice and other refuse. The car was damp, air tight and unfit for shipment of dry corn. When the corn arrived at Athens the evidence shows that it was damp, soggy, sticky, and hot. Just where it became so is not shown. On the return trip from Athens towards Columbus the high water interfered with the delivery at Columbus, and Breshears directed the Mobile & Ohio Railroad Company to make delivery at Union City, Tennessee, which was done Breshears examined the corn and declined to receive it owing to its damaged condition. Thereupon the defendant, Mobile & Ohio Railroad Company, claiming freight and demurrage upon the corn, amounting to $290.28, sold the corn for $144.28, the highest price it could get and applied that sum upon its charge for freight and demurrage, leaving a balance due of $146.52.

The corn was sold as, and could be used only, as food for hogs, and brought only about 15 cents per bushel. Its value at Columbus, Kentucky, at the time of the consignment was about sixty cents per bushel, or a total value of $449.55. The freight charges on the outbound trip from Columbus, Kentucky, to Athens, Georgia, was $109.20, and a like sum from Athens, Ga., returning to Columbus, Ky. When the corn was sold for freight and demurrage charges Breshears filed his claim for $558.75, which included the value of the corn and freight, against the defendant Southern Railway Company. It was placed with the agent of the Mobile &.Ohio Railroad Company, in Hickman county, and after some consideration the claim was rejected by both the Southern Railway Company and the Mobile & Ohio Railroad Co., but the Southern Railway Company, upon whose line a wreck occurred, destroying nine bags of corn, offered $15.75 in settlement thereof, which Breshears declined.

Breshears shorty thereafter became bankrupt, and a judgment accordingly was entered in the Federal

Court directing that certain property of his including "book accounts" be sold by the referee, W. P. Lee. After due advertisement, the property was sold, including "book accounts," and this claim for the lost corn was included in the "book accounts," and the plaintiff A. K. Avey became the purchaser of this claim. Upon the failure of the defendant, Southern Railway Company, to pay and satisfy the same, Avey joining with him the bankrupt Breshears and his trustee, Wm. Ringo, instituted this action in the Hickman Circuit Court for $625.70, the value of the corn, plus the freight and damages. Process was issued on the petition, directed to the sheriff of Hickman county, Ky., and to Jefferson county, Kentucky. The summons in Hickman county was served by the sheriff of the county, by delivering a copy thereof to M. E. Clark, passenger agent of the Mobile & Ohio Railroad Company, stationed at Oakton, Hickman County, Kentucky.

The Southern Railway Company had and now has no agent or line of road in Hickman county, Ky. The summons issued to Jefferson county was executed by the sheriff of Jefferson county upon the Southern Railway Company, and that sheriff made the following return: "Executed on the within named defendant the Southern Railway Company by delivering a true copy of the within summons to Alex. P. Humphrey, agent of the said defendant, Southern Railway Company, it having filed in the office of the Secretary of State a statement in writing, signed by its president, selecting and giving Louisville, Jefferson county, as the location of its office in this state, and the name of Alex. P. Humphrey as its agent thereat, upon whom to serve process as required by section 571 Ky. Stats., said defendant being a non-resident corporation of this state, this 10th day of April, 1916.—C. J. Cronan, S. J. C. By Robert C. Gray, D. S." Afterwards the Southern Railway Company filed in the Hickman Circuit Court its written motion supported by the affidavit of Judge Humphrey and N. I. Hess, asking the court to quash the return on the summons, upon the ground that the defendant, Southern Railway Company, had and has no agent in Hickman county, Kentucky, and no line of road therein, and was therefore beyond the jurisdiction of the court. Before this motion was passed upon by the court, the plaintiffs filed an amended petition, making the Mobile & Ohio Railroad Company a defendant and had

process issued and executed upon it. A second amended petition was also filed charging the defendant Southern Railway Company to be the owner, lessee, and operator of the Mobile & Ohio Railroad Company, which has a line of road operating through Hickman county. This was denied by the Southern Railway Co. and the Mobile & Ohio. The lower court upon a hearing overruled the motion to quash the return on the process, and of this ruling the Southern Railway Company complains. It urges that the Hickman Circuit Court did not acquire jurisdiction over it by service of summons on the agent of the Mobile & Ohio Railroad Company in Hickman county, or by service of summons on Alex. P. Hmphrey, its agent in the county of Jefferson, and relies on sections 51, 73, and 78 of the Kentucky Code, and the case of Louisville & Nashville Railroad Company v. Chestnut, 115 Ky. 43. From the showing made, it is apparent that the court did not acquire jurisdiction of the defendant, Southern Railway Company, by service of summons upon M. E. Clark, agent of the Mobile & Ohio Railroad Company in Hickman county, and the motion of the defendant, Southern Railway Company, to quash that return should have been sustained by the circuit court.

Louisville & Nashville Railroad Co. v. Chestnut, 115 Ky. 43.

We now come to consider the motion to quash the return on the summons executed on Alex. P. Humphrey as agent of the Southern Railway Company in Kentucky. It is not denied that Alex. P. Humphrey, of Louisville, Jefferson county, Kentucky, is the agent of the defendant, Southern Railway Company, designnated by it as the person upon whom process may be served for it, in this state, as provided by section 571 Ky. Stats. Defendant insists, however, that it does not come within the provision of section 73 Civil Code, providing that process may be served upon a common carrier, whether a corporation or not, in the county in which the defendant, or either of several defendants reside; *or in which the contract is made;* or in which the carrier agrees to deliver the property. It asserts that since its motion to quash the return was made and filed long before the defendant, Mobile & Ohio Railroad Company, was made party defendant to the action, there was no defendant served in the county of Hickman, and none resided there and that the contract was

not made there, and the goods were not to be delivered in Hickman county. It is true that the defendant, Southern Railway Company, did not reside in Hickman, nor have an agent or place of business there; and it is likewise true that the property was not to be delivered in Hickman county, but was to be delivered at Athens, Ga., or at most, Union City, Tenn. But was not the contract made in Hickman county? We think it was, under the ruling of this court, in the case of Nashville, &c. Railroad Company v. Carrico, 95 Ky. 489, where it is said:

"The action having been dismissed as to the Louisville & Nashville Railroad Company, the question arises whether the Marion Circuit Court acquires jurisdiction of the Nashville, Chattanooga and St. Louis Railroad Company by simple service of process on its chief officer or agent in the county of Fulton, in which it operates one of its railroads. And that that question depends upon construction of section 73, Civil Code, as follows: 'An action against a common carrier, whether a corporation or not, upon a contract to carry property, must be brought in the county in which the defendant or either of several defendants reside; *or in which the contract is made,* or in which the carrier agrees to deliver the property.' Appellant did not reside in the county of Marion nor were the mules agreed to be delivered there. But it seems to us the contract in this case, having been made in Marion county by the Louisville & Nashville Railroad Company, acting as appellant's agent, must, in meaning of that section, be regarded as made there by appellant, itself, and consequently the Marion Circuit Court had jurisdiction of the person of appellant (railroad company) if the summons was served according to sub-sec. 4, sec. 51, which provides that in an action brought pursuant to section 73, as was done in this case, if the defendant operates a railroad, it may be served upon the defendant's passenger or freight agent, at or nearest to the county seat of the county in which the action is brought."

This rule is founded upon the proposition that the initial carrier is the agent of its connecting carriers, and the contract made by the initial carrier while agent for the subsequent carrier binds the subsequent carrier as though made by itself. The initial carrier is not the agent of the shipper in making the contract, but the

agent of its connecting lines and carriers. Since. the Mobile & Ohio Railroad Company in this case was the initial carrier, receiving the shipment of corn at Columbus, Ky., under this rule, it was the agent of the Southern Railway Company in making the contract. The shipment was received, contract made, and bill of lading issued in Hickman. county by the Mobile & Ohio Railroad Company as the agent of its connecting lines, including the Southern Railway Company. The contract being made in Hickman county and the process executed upon the said Alex. P. Humphrey in Jefferson county, he being the designated agent of the said company upon whom process can be served, gave the Hickman Circuit Court jurisdiction of the person of the defendant, Southern Ry. Co., under section 73, Civil Code, and the circuit court properly overruled the defendant's motion to quash the return on this process.

Alcorn v. Adams Express Co., 148 Ky. 352; Pittsburg C. C. & St. L. Ry. Co. v. Viers, &c., 113 Ky. 526; I. C. R. R. Co. v. Curry, 127 Ky. 643; B. & O. S. W. R. R. Co. v. Clift, 142 Ky. 573.

Appellant, Southern Railway Company, next complains that the plaintiff, Avey, cannot maintain this action because the judgment of the bankruptcy court does not sufficiently describe the property sold, in using the words "book accounts" to warrant the sale of the claim in controversy as a part of the assets of Breshears. We do not attach any importance to this contention, because Breshears as well as the trustee in bankruptcy is joined as parties plaintiff with Avey and all three are prosecuting this action for the use and benefit of Avey. Breshears is not making any complaint against Avey's right to sue, but on the other hand is aiding in the prosecution of this action and is a party to it, and bound by the result.

The Southern Railway Company also complains that the trial court erred in permitting the introduction of the official railway guide, the Southern News Bulletin, and certain letters and envelopes in evidence against it. This was allowed upon the idea that it would support or tend to support the allegations of plaintiffs' petition wherein it is alleged that the Mobile & Ohio Railroad Company is a mere division or line of road owned by and under the management and control of the Southern Railway Company, and not in truth and in fact a separate and independent railroad. While we regard this evidence as

wholly unnecessary, it could not and did not mislead the jury upon the main question submitted to it, but was only directed to and could only have influenced the jury upon the one point: Was the Southern Railway Company before the court? Since it (Southern Railway Company) was properly before the court upon service of process, it was immaterial that evidence was heard tending to establish the identity of the two roads.

This is an interstate shipment, and a more serious question is made by the defendant, Southern Railroad Company, when it relies upon the Carmack amendment, passed by the National Congress in 1906, providing:

"That any common carrier, railroad, or transportation company, receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose lines the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury that it may be required to pay the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

Under this act the initial carrier is made responsible for the entire loss or damage, irrespective of whether the loss or damage occurred upon its line or the line of some subsequent carrier.

Charleston & Western C. Ry. Co. v. Varmville Fur. Co., 237 U. S. 597; Atlantic Coast Line v. Riverside Mills, 219 U. S. 185; Hudson v. Chicago, St. P. M. & O. Ry. Co., 226 Fed. Rep. 38.

But does this prevent the shipper from suing and recovering from an intermediate carrier? Does the act of Congress confine the remedy or action to the initial

carrier alone? This question has often arisen in other states but seems not to have been passed upon in this jurisdiction.

The proviso in the Carmack act, which says, ''Nothing in this section shall deprive any holder of such receipt, or bill of lading, of any remedy or right of action which he has now under existing laws,'' would appear to enlarge and extend the remedy existing at the time of the enactment of the measure in 1906 by giving a complete remedy against the initial carrier, while taking away none that already existed against intermediate and subsequent carriers. But the Supreme Court of the United States has construed this proviso to mean only such remedy or right of action as existed under the federal laws, statutory or common, at the time of the passage of the measure and not such remedy or right of action as the shipper had under the state law.

So construed the act gives the shipper the right of recovery for the whole loss or damage sustained, against the initial carrier, whether the loss or damage occurred upon its line or not, but this right does not extend to connecting or intermediate carriers, even though the state law so provides when the shipment is interstate. Adams Express Co. v. Croniger, 226 U. S. 491; Missouri, Kansas & Tex. Ry. Co. v. Harris 234 U. S. 412.

At common law a carrier for hire is an insurer of the safe delivery, and the shipper has a right of action against each carrier in a line in turn for the damage occurring upon its division, but not for that occurring upon a line of a predecessor or a successor in the route. The rule laid down by the Supreme Court of the United States and now generally followed throughout the several states in construing the Carmack amendment, is that a shipper has a complete remedy against the initial carrier for all loss or damage sustained, and he need join no subsequent carrier. Or, he may have his remedy against an intermediate carrier for loss which occurred upon its line only, but not for any loss occurring otherwise, and in such a case, the burden is upon the shipper to show, not alone the damage, but that it occurred upon the line of the defendant, and not upon one of its connecting lines; and his recovery will be limited to such loss or damage as he thereby sustained. Although the proof fully show the damage, yet the plaintiff will fail, against an intermediate or subsequent carrier, unless it be shown that the defendant occasioned the loss or dam-

age. But, an intermediate carrier is, of course, liable for loss or damage which results from negligence while in its care. Atlantic C. L. Co. v. Thomasville Live Stock Co., 13 Ga. App. 102.

Since the plaintiffs have failed to show any loss upon the defendant, Southern Railway's line, except nine bags of corn of the value of $15.75, destroyed in a wreck, and since the verdict of the jury and judgment of the court is for $449.55, against the two defendants, Southern Railway Company and Mobile & Ohio Railway Company, jointly, each being liable for the whole amount, it follows that the lower court erred in failing to direct a verdict for $15.75 only as against defendant, Southern Railway Co. At most, the Southern Railway Company, was liable under the evidence for $15.75, the loss occurring on its line.

Defendants also insist that the appeal should be granted and the judgment reversed because of irregularity in the selection and impaneling of the jury which tried the case, and they rely upon several cases, including L. & N. Railroad Co. v. King, 161 Ky. 324; L. & N. v. Owens, 164 Ky. 567; Trosper Coal Co. v. Rader, 166 Ky. 797; L. & N. R. R. Co. v. Perry, 167 Ky. 223; Winchester, &c. v. Watkins, 169 Ky. 213. We do not agree with this. The jury returned the most favorable verdict to the defendants possible under the evidence. It made no mistake against the defendant, Mobile & Ohio Railroad Company.

The shipment out of which this case arose is conceded to be of the value of $449.55, at the time of the delivery to the Mobile & Ohio Railroad Company, at Columbus, Ky., January 30th, 1913. By placing the corn in a damp, airtight, refrigerator car out of which had just been moved ten wagon loads of rotten bananas, ice and other refuse, the corn was caused to become damp, sticky, heated, and finally was entirely confiscated by the defendant Mobile & Ohio Railroad Company and applied on its freight and demurrage charges. This it had no right to do, and the whole amount thus realized belonged to plaintiffs, because it was corn of Breshears. Ruskin v. C., N. O. & T. P. Ry. Co., 163 Ky. 183. The defendant, Mobile & Ohio Railroad Company being the initial carrier was responsible to the shipper for the entire loss, but it is entitled to recoup itself for any part of the loss occurring upon the line of one of the connect-

ing carriers. The plaintiffs having recovered only $449.55, the fair and reasonable value of the corn at the time of its delivery to the Mobile & Ohio Railroad Company, the exact sum according to all the evidence, the plaintiff was entitled to recover, we can see no prejudicial error committed by the jury or the court in respect to the rights of this defendant, Mobile & Ohio Railroad Company.

For this reason the appeal sought by the Mobile & Ohio Railroad Company is denied. The appeal prayed by the defendant, Southern Railway Company, for the reasons above stated is granted, and the case reversed as to the Southern Railway Company, but not to affect the judgment against the defendant, Mobile & Ohio Railroad Company, for the reasons stated above. Case remanded to the lower court for further proceedings not inconsistent with this opinion..