25748. SPERRY FLOUR CO. *v.* ATLANTIC COAST LINE RAILROAD CO.

DECIDED DECEMBER 3, 1936.

*Smith, Smith & Bloodworth,* for plaintiff.
*Alston, Alston, Foster & Moise, W. H. Sibley,* for defendant.

BROYLES, C. J. This suit was brought to the superior court of Fulton county, Georgia, and the original petition (formal parts omitted) was as follows: "The petition of the Sperry Flour Company, of Tacoma, State of Washington, respectfully shows: 1. That the defendant hereto is the Atlantic Coast Line Railroad Company, a corporation of the State of Virginia, and a common carrier. 2. That said defendant railway company, as a common carrier, has injured and damaged your petitioner in the sum of $1500, for the recovery of which petitioner brings this suit in tort. 3. That your petitioner shipped 700 sacks of its flour from Tacoma, Washington, to Atlanta, Georgia, in January, 1935. 4. That said flour amounted to 98,000 pounds in sacks containing 140 pounds each; a total equivalent of 500 barrels of flour of 196 pounds each. 5. That said flour was delivered by petitioner, as shipper, in good order and condition on or about January 15,

1935, to the initial common carrier, the American-Hawaiian Steamship Company, at Tacoma, Washington. 6. That petitioner prepaid the freight on said flour, amounting to $583.10 to the Steamship Company. Such freight charges included the freight on said shipment to Atlanta, Georgia. 7. That said flour duly arrived at Charleston, South Carolina, on or about February 17, 1935, and was there unloaded from the ship. 8. That among the lines of railroads which the defendant owns and operates is a railroad line extending from the City of Charleston, South Carolina, to the City or town of Waycross, in the State of Georgia. 9. That the defendant railroad company then furnished two of its cars needed for the transportation of said flour over its railroad line from Charleston to Waycross, and thence to Atlanta. 10. That the said flour was then loaded into said cars, 350 sacks in each car, said cars being lettered and numbered Atlantic Coast Line 48228 and Atlantic Coast Line 50169. 11. That when said flour was so loaded into said cars it was in good order and condition. 12. That the defendant issued its way-bills at Charleston, South Carolina, covering these cars, car ACL 50169, being covered by Charleston to Atlanta way-bill 51748, February 18, 1935, and car ACL 48228 covered by Charleston to Atlanta way-bill 51749, February 19, 1935. 13. That the defendant railroad company then carried said two cars of flour in its trains over its railroad line, from Charleston, South Carolina, to Waycross, Georgia. 14. That at Waycross, Georgia, said railroad line of the defendant railroad company connects with the railroad line of the Atlanta, Birmingham and Coast Railroad Company. 15. At Waycross, Georgia, said defendant then delivered said two loaded cars of flour, closed and locked under seal, to the Atlanta, Birmingham and Coast Railroad Company, the next connecting common carrier. 16. That the railroad line of the Atlanta, Birmingham and Coast Railroad Company extends from Waycross, Georgia, to the City of Atlanta, Fulton County, Georgia. 17. That said flour had been contracted to be sold to the Atlanta Flour and Grain Company, f.o.b. cars, Atlanta, Georgia, for $2925 cash, or at the rate of $5.85 for each 196 pounds of flour. 18. That said two cars of flour were then carried by the Atlanta, Birmingham and Coast Railroad Company over its railroad from Waycross to Atlanta and into the side-tracks in the place of business of the Atlanta Flour and Grain Company,

locked and sealed exactly as delivered by the defendant railroad company to said Atlanta, Birmingham and Coast Railroad Company at Waycross, Georgia. 19. The Atlanta Flour & Grain Company then opened said two cars of flour, car 48228 on February 22, 1935, and car 50169 on February 23, 1935, and found said cars filled with fumes from some kind or kinds of chemicals; and that such chemicals and such fumes had tainted the flour to such an extent as to materially damage same; whereupon and by reason thereof said Atlanta Flour and Grain Company, as buyer, refused to accept and pay for said flour. 20. That thereupon and thereafter your petitioner, in order to protect its interest, spent $23.85 telegraphing and telephoning concerning this rejected shipment and its disposition, and $38.88 cost of expert and chemical examinations thereof, in order to ascertain the condition of the flour and to determine what disposition to make of it. 21. That said defendant railroad company's said two cars so furnished contained noxious chemicals of some sort, of a kind and character unknown to petitioner; and which produced noxious fumes; said chemicals and fumes being highly injurious to said flour shipped in said cars, during the days and nights consumed in the transportation and delivery of said cars when loaded into same, as aforesaid. 22. That your petitioner finally sold said flour at the best price petitioner could get therefor in the market, to wit, $2075, a sum that was $850 less than the purchase-price at which petitioner had said flour sold. The original purchase by and sale to the Atlanta Flour & Grain Company would have been consummated and payment had of the agreed price, $2925, on February 23, 1935, if defendant had not damaged said flour. 23. That the defendant railroad company was careless and negligent as follows: (a) In not furnishing cars in which said flour could have moved over the defendant's railroad, and to final destination in good condition and without damage to said flour. (b) In furnishing cars in which said flour moved over defendant's railroad and to final destination, which cars contained noxious chemicals of some sort, of a kind unknown to petitioner, which produced noxious fumes, which chemicals and fumes tainted said flour therein while so in transit to Atlanta. (c) In not further protecting said flour from chemicals and fumes thereof as far as possible, by covering in the interiors of said cars, both the floors and the ends and sides as high

up as the flour was stacked, with heavy paper or similar covering substance; and in not covering the tops of the stacks and the exposed sides thereof with such paper or similar protective substance. (d) In transporting said flour, as a common carrier, over its railroad line in noxious cars. 24. That by reason of such carelessness and negligence of the defendant railroad company, petitioner has sustained damages in the sum of $1500, as aforesaid, for which your petitioner prays judgment against said defendant railroad company accordingly. 25. That said defendant railroad company has an office and place of business in the City of Atlanta, in said State and county, in charge for it of Oscar J. English, as general agent of the Atlantic Coast Line Railroad Company; defendant company being a colessee, with the Louisville and Nashville Railroad, of the Georgia Railroad, the termini of which railroad are Atlanta, Georgia, and Augusta, Georgia, and which said railroad is operated by said lessees thereof."

The defendant interposed the following demurrer (formal parts omitted) : "1. Defendant demurs specially to paragraph 9 of said petition, on the ground that it is not alleged in said paragraph or elsewhere in said petition, to whom the defendant furnished the two cars mentioned therein, and defendant shows that this is a material allegation which should appear in said paragraph or elsewhere in said petition. 2. Defendant demurs specially to paragraph 12 of said petition, on the ground that said paragraph is irrelevant and immaterial in so far as it alleges that this defendant issued way-bills covering the movement of the two cars therein specified from Charleston to Atlanta. Because of the irrelevancy and immateriality of said allegations, this defendant shows that the same should be stricken. Wherefore defendant prays that these, its grounds of special demurrer, be inquired into and sustained, and that said petition be dismissed, unless the plaintiff shall amend to meet the objections urged herein." The court overruled the demurrer to paragraph 12, and sustained the demurrer to paragraph 9, with leave to amend within ten days. Within the time allowed, paragraph 9 was amended by adding the following words: "And petitioner alleges, on information and belief, that said cars were by the Atlantic Coast Line Railroad Company furnished to a concern known as the 'Port Utilities Commission' or as 'Public Utilities Commission;' petitioner does

not know the exact name." The amendment was allowed, subject to demurrer. Subsequently the defendant filed the following demurrer: "Comes now the defendant, Atlantic Coast Line Railroad Company, and files this its demurrers and motion to dismiss plaintiff's petition as amended on March 23, 1936, and shows as follows: 1. Plaintiff's petition as amended sets out no cause of action against this defendant, at law or in equity. 2. Defendant demurs to plaintiff's amendment allowed on March 23, 1936, wherein it is attempted to amend paragraph 9 of the petition, on the ground that the same is vague, indefinite, and evasive, and does not meet the demurrer of the defendant heretofore filed, which was sustained on March 16, 1936. It is not alleged in said paragraph as amended whether the Port Utilities Commission or Public Utilities Commission is a common carrier and agent of the plaintiff or what nature of 'concern' it is. It is alleged in plaintiff's petition that this defendant delivered said shipment to the Atlanta, Birmingham & Coast Railroad Company, closed and locked under seal, and further that said shipment was delivered to the American-Hawaiian Steamship Company as initial common carrier. Hence plaintiff's petition as amended is a suit against defendant as an intermediate or connecting carrier, and must be so construed. Defendant moves that said petition and said amendment be dismissed. 3. Defendant specially demurs to paragraph 23 of plaintiff's petition and subdivisions (a), (b), (c), and (d) thereof, on the grounds that the same are vague and indefinite, are conclusions of the pleader, and neither said paragraph nor the petition as a whole sets up sufficient facts to show a duty on the part of this defendant to the plaintiff which was breached, nor any other facts constituting negligence in the particulars attempted to be set up on the part of this defendant. (a), (b) Defendant specially demurs to subdivisions (a) and (b) of paragraph 23, on the ground that it is not alleged in said paragraph or elsewhere that defendant furnished cars to the plaintiff or was under any duty so to do. (c) Defendant specially demurs to subdivision (c) of paragraph 23, on the ground that it is not alleged in said paragraph or elsewhere in said petition that there was any duty on defendant to protect said shipment, as therein attempted to be set out, and no reasonable and ordinary inspection of said shipment on its delivery to the defendant as

connecting carrier would have disclosed the condition of the interior of said car, and defendant was under no duty to break the seals on said car and examine the interior of said car and the condition of the shipment as connecting carrier. (d) Defendant demurs specially to subdivision (d) of paragraph 23, on the grounds that the same is vague and indefinite and it is not set up in said paragraph or elsewhere in the petition wherein defendant was negligent in transporting said shipment over its lines, neither are there any facts set up to show notice on this defendant of the condition of the shipment and the interior of said car." The court sustained all grounds, general and special, of the demurrer, and dismissed the case; and the plaintiff excepted.

▉ It is to be noted that the only special demurrer to the original petition which was sustained was to paragraph 9, which alleged that the defendant "then furnished two of its cars needed for the transportation of said flour over its railroad line from Charleston [South Carolina] to Waycross [Georgia], and thence to Atlanta [Georgia];" and that the demurrer interposed was on the ground "that it is not alleged in said paragraph or elsewhere in the petition to whom the defendant furnished the two cars mentioned therein, and defendant shows that this is a material allegation which should appear in said paragraph or elsewhere in said petition." As hereinbefore stated, the demurrer was sustained, with leave to amend within ten days; and within that time the paragraph was amended by setting forth the name of the concern to whom the defendant had furnished the two cars referred to therein. We hold that the amendment sufficiently cured the precise defect pointed out by the special demurrer in question. Moreover, under the allegations of the petition, it appears that the defendant was in a better position than the plaintiff to know the name of the concern to which it furnished the cars. The defendant was at Charleston, where the cars were furnished, while the plaintiff presumably was at its home, several thousand miles distant, and under the protection of the interstate-commerce law which controlled every phase of the transportation from Tacoma to Atlanta, and made every service rendered in transit, including furnishing of suitable cars for the shipment, an interstate-commerce service; and the law did not require the plaintiff to know anything about the concern to which the defendant furnished the

cars. The furnishing of the cars was a matter of interstate-commerce routine, with which the plaintiff had no concern. If there were merit in any of the special grounds of the demurrer to the amendment to the petition, or to the petition after its amendment, the plaintiff should have been given time for further amendments, if any were necessary; and the court erred in sustaining the special grounds of the second demurrer, without giving the plaintiff an opportunity to amend further. Therefore the only question before this court is whether the general demurrer to the amended petition was properly sustained. "'Where a court at one and the same time passes upon a demurrer containing both general and special grounds, and sustains the demurrer and dismisses the action, without giving the plaintiff opportunity to amend, the judgment will be reversed if it appears that the general demurrer was improperly sustained. The proper judgment on a special demurrer, going only to the meagerness of the allegations, is not a peremptory judgment of dismissal of the action, but a judgment requiring the plaintiff to amend and to make his petition more certain in the particulars wherein he has been delinquent; and then if he refuses to amend, the petition may be dismissed, if the delinquency relates to the entire cause of action. However, if the special demurrer goes only to some particular part of the petition, without which a valid cause of action would still be set forth, the result of finally sustaining the special demurrer would be, not to dismiss the action, but to strike the defective portion.'" *Moseley* v. *Equitable Life Assurance Society*, 49 *Ga. App.* 424 (3) (176 S. E. 87), and cit.

2. It is also our opinion that the amended petition set forth a cause of action, and that its dismissal on demurrer was error. The petition shows the following facts: The shipment was an interstate shipment of flour, by water and rail, from Tacoma, Washington, to Atlanta, Georgia; the shipment was delivered by the plaintiff (the shipper) in good condition, to the initial common carrier, the American-Hawaiian Steamship Company, at Tacoma, and the plaintiff prepaid the freight to said company; the flour was transported by the steamship company to Charleston, South Carolina, where it was unloaded from the ship; the defendant railroad company then furnished two of its cars to a concern known as the "Port Utilities Commission," or as the "Public Utilities Commis-

sion," the exact name not being known by the plaintiff; the two cars were needed for the transportation of the flour over the defendant's railroad line from Charleston to Waycross, Georgia, and thence over the Atlanta, Birmingham & Coast Railroad Company, to Atlanta; when unloaded from the ship and when loaded in the defendant's cars the flour was in good condition; the defendant issued its way-bills covering the shipment from Charleston to Atlanta, and carried it from Charleston to Waycross, where the loaded cars, locked and sealed, were delivered by it to the next connecting carrier, the Atlanta, Birmingham & Coast Railroad Company; that carrier then transported the shipment over its railroad line from Waycross to Atlanta and onto the side-tracks in the place of business of the purchaser of the flour, the Atlanta Flour & Grain Company; when they arrived at their final destination the cars were "locked and sealed exactly as delivered by the defendant railroad company to said A., B. & C. Railroad Company at Waycross, Georgia;" when the buyer opened the two cars, it was discovered that they were "filled with fumes from some kind or kinds of chemicals, and that such chemicals and fumes had tainted the flour to such an extent as to materially damage same; whereupon and by reason thereof . . the buyer refused to accept and pay for said flour;" the two cars "so furnished by the defendant contained noxious chemicals of some sort of a kind and character unknown to petitioner, and which produced noxious fumes, said chemicals and fumes being highly injurious to said flour shipped in said cars during the days and nights consumed in the transportation and delivery of said cars when loaded into same as aforesaid;" petitioner finally sold the flour at the best price obtainable, to wit, $2075, a sum $850 less than the purchase-price at which the flour had been contracted for by the Atlanta Flour & Grain Company.

The ground of demurrer that the defendant, as a connecting carrier, was under no duty to break the seals of the two cars in question and examine the flour therein is without merit, it clearly appearing from the petition that the damage to the flour was caused *solely* by the *defendant's* own act in furnishing defective and unsafe cars in which to load and transport the flour. Likewise the ground of demurrer alleging that the petition failed to state that the defendant furnished the cars to the *plaintiff* is

equally without merit. This was an interstate shipment, and the freight thereon had been prepaid by the plaintiff company, which resided in the State of Washington, and it was not incumbent on it to accompany the shipment to Charleston and to see that the defendant furnished suitable cars for the transportation of the flour from Charleston via Waycross to Atlanta. The duty of furnishing cars for the further transportation of the shipment rested solely upon the defendant. As said by the court in Illinois Central R. Co. *v.* De Fuentes, 236 U. S. 157 (35 Sup. Ct. 275, 59 L. ed. 517): "When freight actually starts in the course of transportation from one State to another, it becomes a part of interstate commerce. The essential nature of the movement and not the form of the bill of lading determines the character of the commerce involved. And generally when this interstate character has been acquired, it continues until the load reaches the point where the parties originally intended that the movement should finally end." And in Ft. Worth *v.* Strickland (Tex. Civ. App.), 208 S. W. 410, 413, the court said: "Congress evidently recognized that the duty to the public included a variety of services that, according to the theory of the common law, were separable from the services of carriers as carriers, so that by the act of Congress the entire body of the services to be performed falls under the general head of transportation, among which is furnishing cars. So it is made the duty of the carrier to 'furnish suitable' cars as part of the transportation."

We find no merit in the further contentions of the defendant, that the plaintiff should have sued the initial carrier and not the defendant; and that the petition was fatally defective in that it did not show that all of the damage to the shipment occurred while the shipment was in transit over the defendant's railroad line. It is well settled that while the Carmack amendment to the Hepburn act (49 U.S.C.A. § 20(11)), as finally amended, gives to the shipper the right to sue the initial carrier for all damages to an interstate shipment, it does not prevent the shipper from bringing an action in tort against any connecting or intermediate carrier, where the negligence of such carrier caused the damage to the shipment. Georgia, Florida & Alabama Ry. Co. *v.* Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L. ed. 948); *Fleshnar* v. *Southern Ry. Co.*, 160 *Ga.* 205 (3) (127 S. E. 768),

and cit.; *Cincinnali &c. Ry. Co.* v. *Quincy*, 19 *Ga. App.* 167 (91 S. E. 220), and cit. Under the peculiar facts of this case as disclosed by the petition, the contention that the defendant is not liable unless all of the damage to the shipment occurred while it was being hauled over the line of its railroad is without merit. Since the *entire* damage to the shipment resulted *solely* from the defendant's own negligence in furnishing defective cars filled with noxious chemicals and fumes, for the transportation of the flour for the entire journey from Charleston to Atlanta, a considerable part of the journey being over its own railroad line, and the flour being damaged *solely* by the noxious chemicals and fumes, it is immaterial whether or not *all* of the damage occurred on the defendant's railroad line; and this case is an exception to the general rule that a connecting carrier is liable for damage to an interstate shipment only where the damage was the result of its negligence, *and where all of the damage occurred while the shipment was passing over its own railroad line.* To hold otherwise in this case would result in a patent miscarriage of justice.

The cases cited by the defendant in error, where apparently in conflict with the foregoing rulings, are distinguished by their particular facts.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*