**BONIFIELD BROTHERS TRUCK LINES, INC., Appellant,**

v.

**Henry EDWARDS, d/b/a Henry Edwards Trucking Company, Appellee.**

Court of Appeals of Kentucky.

Feb. 6, 1970.

James G. Apple, Wheeler, Marshall & Apple, Paducah, for appellant.

H. W. Roberts, Jr., Clinton, William E. Scent, Reed, Scent & Reed, Paducah, for appellee.

OSBORNE, Judge.

This controversy arises out of a shipment of steel tubing from the Continental Tube Company at Bellwood, Illinois to the plant of Deena of Arlington, at Arlington, Kentucky.

The appellant, Bonifield Brothers Truck Lines, Inc., is a motor carrier with service from the Illinois area to Paducah. The appellee, Henry Edwards, had a truck line with service from Paducah to Arlington, a distance of some 40 miles. Bonifield received an order to move a shipment of steel from Illinois to Kentucky and upon the receipt were instructions from the shipper, "protect from weather—keep dry."

Bonifield used an open-top trailer, with a protective tarpaulin, pulled by a tractor. The bundles of steel weighed from 3,000 to 4,000 pounds each, and were loaded onto the trailer by the shipper. Upon its delivery to the consignee, it was to be unloaded by hand. The shipment left Chicago on March 1, 1963, and arrived at Paducah on March 4, 1963.

Appellant notified Edwards by telehone on the date of arrival that the shipment was at its terminal. Appellee dispatched a driver and tractor unit to Bonifield's Paducah terminal that afternoon and picked up the loaded trailer at about two or three o'clock. Edwards' driver arrived at Arlington at the consignee's loading dock shortly before closing time and since it would take from two to three hours for Deena's employees to unload the trailer Deena decided to delay unloading until the next day and the trailer was left in the possession of Edwards at the consignee's dock overnight. During the night it rained and when the trailer was opened by the consignee's employees the next morning it was found that the steel was wet. The consignee refused the delivery.

In 1963 Continental Tube Company brought suit against Bonifield in the state of Illinois under the Carmack Amendment, 49 U.S.C.A. § 20, para. (12), to recover the value of the tubing in the sum of $3,465.41. Judgment was granted in this amount. Bonifield thereupon brought this suit in the McCracken Circuit Court against Edwards for reimbursement of the amount of the judgment.

A pre-trial order was entered and the above facts were stipulated. It was admitted by both parties, among other things, that the shipment of steel was delivered to the Edwards' agent in an undamaged and in a good or proper condition.

Bonifield's motion for summary judgment was overruled and the case was tried on the issue of improper packaging or defective covering of the shipment. The burden of proof was placed on the appellee to exonerate himself. The first witness was Henry Edwards, who testified that his trucking company made frequent deliveries to the Deena plant, since it was one of the major customers in the area they serve. Edwards stated he was notified the morning following the delivery of the refusal of this shipment because it was wet. He stated that he went to the plant two days later and found the tarpaulin tied down, and that he could see where water had dripped all over the tubing and that the Deena employees showed him "holes" in the tarpaulin.

Edwards further identified the delivery receipt which had been signed by his driver without any exception being noted on the receipt, and admitted that the words on the receipt, "protect from weather—keep dry," applied to all carriers, and not just Bonifield Brothers. Edwards testified he had tarpaulins available that could have been used to protect this shipment. Other employees of Edwards testified that they went to the unloading dock and saw worn spots and holes in the tarpaulin and there is further testimony that at the time the shipment was transferred to Edwards' agent, the sun was shining and it was a beautiful day.

At the conclusion of the introduction of appellee's and appellant's evidence, respectively, motion for directed verdict was made and overruled by the court. The majority of the facts in this case being stipulated, the remaining issues submitted to the jury were:

1. Whether or not Edwards made a reasonable inspection of the load at the time he received it.

2. Whether or not the tarpaulin and protective covering on the load was defective.

3. If the tarpaulin was defective, whether or not the defect was latent.

Following the entry of judgment, appellant made motion for judgment n. o. v. contending there were no material issues of fact to be tried by the jury. This contention arises out of certain constructions placed upon the law by appellant. It seems to be his contention that under the Carmack Amendment, 49 U.S.C.A. § 20, para. (12), which makes carriers insurers of goods, where judgment is recovered against the initiating carrier it is entitled as a matter of right to recoup its loss from any other carrier upon whose line the loss occurred without regard to fault. We do not believe this to be the law. The general principle relative to the right of the initial carrier to recover from other carriers is stated in 14 Am.Jur. 2, Carriers, § 708, p. 203:

"It is the purpose of the Interstate Commerce Act to give an initial or delivering carrier, after it has been required to pay the loss, a remedy over against the connecting carrier or carriers causing the loss of or damage injury to the goods. An initial carrier is entitled to recover, from a delivering carrier in possession of the goods when loss occurred, the amount paid by the initial carrier to the consignee for such loss.

However, an initial or delivering carrier cannot recover from an intermediate carrier in the absence of evidence that the loss of or damage to goods resulted from *the fault or negligence of such carrier."* (Emphasis added.).

Negligence has always been the basis of recovery as between carriers. Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167; Sperry Flour Co. v. Atlantic Coast Line R. Co., 54 Ga.App. 725, 189 S.E. 278; Davis, Federal Agent v. Standard Rice Co., Tex. Civ.App., 293 S.W. 593; B. C. Truck Lines, Inc. v. Pilot Freight Carriers, Inc. (D.C. N.D. Ga., 1963), 225 F.Supp. 1; Produce Trading Co. v. Norfolk Southern R. Co. (1919), 178 N.C. 175, 100 S.E. 316 and Southern Ry. Co. v. Avey, 173 Ky. 598, 191 S.W. 460. The rule has long been that liability by the carriers is to be determined by proof of fault or negligence. Appellant has erroneously attempted to convert a rebuttable presumption of liability into a conclusive one. We are of the opinion that the trial court was proper in submitting the question of negligence to the jury.

■ It is next contended by appellant that when Edwards accepted the shipment he accepted any improper loading that existed at that time and thereby became responsible for it. We do not believe this to be the rule. One who accepts goods whether from the shipper or from another carrier has only the duty of ordinary observation. See 14 Am.Jur. 2, Carriers, § 708, p. 202. Also, Emerson Electrical Manufacturing Company v. Terminal R. Asso., Mo., 262 S.W.2d 323 (1953). See, also, Annotation, Carrier—Liability—Improper Loading, 44 A.L.R.2d, § 7, p. 1002, wherein the rule is stated as between shipper and carrier. We see no reason why this same rule would not prevail where one carrier is transferring a shipment to another carrier.

■ Appellant next contends that under the Carmack Amendment, it, as the initial carrier, is only liable for what the delivering carrier does as a carrier and not for what it does as a warehouseman. The thrust of this contention is that when Edwards held the load overnight while waiting for Deena's employees to unload it, its duties as a carrier had ceased and it was holding the goods as a warehouseman. Therefore, the obligation of the initial carrier to answer for the acts of the intermediate carrier ceased as the goods had reached the destination to which they were originally consigned. If this contention is correct, and we have no reason to doubt it, it should have served as a good defense for Bonifield Brothers in the original action instituted against them by the shipper. This is the wrong action in which to assert this defense.

Appellant next contends that because Edwards signed a clear delivery receipt and raised no objections to the packaging he should be estopped from relying upon any defense of improper packaging. No authority is cited for this rule and we know of none. In any event under the instructions submitted by the court the jury could well have believed that the defect in the packaging was latent and not discoverable by Edwards.

■ Testimony before the jury as to the condition of the tarpaulin was somewhat conflicting. Some of those who were to assist in the unloading testified that the tarpaulin was in poor condition. Appellant's witnesses who did the loading and packaging testified that the tarpaulin was in first-class condition. With this conflict in testimony we have no alternative but to abide with the verdict. It was the province of the jury to determine the weight of the evidence and the credibility of the witnesses. The verdict of the jury not being palpably against the weight of the evidence and no other sufficient error being assigned, we are of the opinion the judgment should be affirmed.

Judgment affirmed.

All concur.